IN RE: SUPERVISION AND ASSIGNMENT OF THE PETIT JURY PANELS IN ESSEX COUNTY.

Argued February 7, 1972—Decided June 19, 1972.

*Mr. Francis Patrick McQuade,* Essex County Counsel, argued the cause for appellant, John F. Cryan, Sheriff of Essex County.

*Mr. Dickinson R. Debevoise* argued the cause for respondent, The Honorable James R. Giuliano, Assignment Judge of Essex County.

*Mr. Joseph F. Walsh* argued the cause for *amicus curiae,* Essex County Bar Association (*Mr. Walsh and Mr. Samuel S. Saiber,* attorneys and on the brief).

The opinion of the Court was delivered by
MOUNTAIN, J.   A dispute arose between the Honorable James R. Giuliano, Assignment Judge of the County of Essex, and John F. Cryan, Sheriff of the same county, as to the manner in which petit jury panels are to be summoned, as to who is to care for and supervise petit jurors during their terms of service and as to who is to pay them their statutory allowances. Judge Giuliano by order dated February 3, 1971, appointed a senior court clerk "to assist the Assignment Judge for Essex County in summoning and supervising the daily attendance of the petit jurors and the assigning of petit jurors required for trials by the Superior Court, the Essex County Court and the Essex County District Court, effective March 1, 1971." Soon thereafter the Sheriff, acting upon the advice of counsel, assigned persons from his own office also to summon and supervise the daily attendance of jurors. The lines being thus drawn, on April 20, 1971, Judge Giuliano served on Sheriff Cryan an order to show cause why the latter "should not be permanently

enjoined and restrained from in any way interfering with
or attempting to interfere with the exercise by the Court
of its aforementioned duties and responsibilities to super-
vise, process, and select petit jurors and petit jury panels
and assist petit jury panels for trials to the Superior Court,
the Essex County Court, and the Essex County District
Court."

On the return day of the order to show cause Judge
Giuliano presided. He denied the Sheriff's motion for a
change of venue, refused to disqualify himself and granted
the motion of the Essex County Bar Association for leave
to appear as amicus curiae. Judge Giuliano expressed the
view that the action he had taken was purely administra-
tive and that hence the Sheriff was not entitled, as he con-
tended, to treat the hearing as a plenary proceeding at
which testimony might be taken and a record made. The
Court heard oral argument directed to the validity of the
challenged order, and on May 12, filed an opinion, 114
*N. J. Super.* 527, and entered an order enjoining the
Sheriff from in any way interfering with the Court's ex-
ercise of its duties "to supervise, process and select petit
jurors and petit jury panels and assign petit jury panels
for trials to the Superior Court, the Essex County Court and
the Essex County District Court."

The Sheriff appealed to the Appellate Division and we
certified the case upon our own motion. *R.* 2:12–1.

The narrow issues here presented concern only the actual
summoning of petit jurors, their supervision while attend-
ing the courts and the manner in which they shall receive
the statutory fees to which they are entitled.

The selection of persons to serve on petit jury panels
was once the province of the sheriff. *State v. Sturdivant,*
31 *N. J.* 165, 171 (1959), *cert.* den. 362 *U. S.* 956, 80
*S. Ct.* 873, 4 *L. Ed.* 2d 873 (1960); *State v. Profita,* 114
*N. J. L.* 334, 338 (E. & A. 1935). Due to abuses, es-
pecially the packing of juries, this power, at least in part,
was taken from the sheriff by the so-called Fielder Act, *L.*

1913 (Sp. Sess.) *c.* 20, and was placed in the hands of jury commissioners. The sheriff of each county became, *ex officio,* one of the commissioners; the other, appointed by the Chancellor, was to be a local resident, not of the same political party as the sheriff. Later the Governor was substituted for the Chancellor as the person to make the appointment, *L.* 1929, *c.* 17, and still later the justice of the former Supreme Court presiding in the county. *L.* 1934, *c.* 111. Upon the passage of *L.* 1944, *c.* 96 the sheriff ceased to be one of the two commissioners solely by virtue of his office; rather, two resident citizens in each county, of different political parties, were to be appointed by the Governor as "commissioners of juries." The sheriff might be, but need not be, one of the commissioners so selected. Finally, by *L.* 1953, *c.* 240, (*N. J. S. A.* 2A:68–1), the power to appoint jury commissioners was lodged in the Supreme Court.

None of this is disputed by Sheriff Cryan, who agrees that the selection of petit jury panels rests with jury commissioners appointed to office by this Court. What he does claim, however, is the right, entirely ministerial in nature, to issue and serve the actual written notices summoning the jurors to attendance, whether this be done by personal service or by mail. *N. J. S. A.* 2A:72–5. The opposing position of the Assignment Judge is that while he, the judge, *may* call upon the sheriff to perform this task, he is not required to do so, but rather is at liberty to adopt some different administrative arrangement, as he has in fact done here. We agree, for reasons to be discussed below, that the Assignment Judge possesses this power.

Initially we note that the office of sheriff is not a constitutional office in the sense that some provision in the constitution protects it from legislative change. Rather, the Legislature is entirely at liberty to increase, decrease or modify the powers and duties incident to this position. A contrary view, expressed in *Virtue v. Freeholders of Es-*

*sex,* 67 *N. J. L.* 139 (Sup. Ct. 1901), was repudiated in *State v. De Lorenzo,* 81 *N. J. L.* 613, 620 (E. & A. 1911); see also *Pub. Utility Comm'rs v. Lehigh Valley R. R. Co.,* 106 *N. J. L.* 411, 419 (E. & A. 1930). While these cases were decided under the Constitution of 1844, the language of the only provision of the Constitution of 1947 which makes reference to the office of sheriff is not significantly different.[1]

Article IV, § VII, par. 9, of the 1947 Constitution specifically authorizes the Legislature to pass general laws having to do with "[s]electing, drawing, summoning or empaneling grand or petit jurors," while at the same time forbidding the passage of any private, local or special law directed to this subject. The same provision was to be found in the 1844 Constitution. Article IV, § VII, par. 11 (as amended 1875).

The statutory scheme which the Legislature has adopted pursuant thereto, touching the selection, summoning and control of petit jurors, reveals a clear legislative intent that this area of judicial administration shall rest with the judiciary and especially the assignment judges. As we have already indicated, the appointment of jury commissioners in each county has become the responsibility of the Supreme Court, *N. J. S. A.* 2A:68–1, which also has been given the power of removal, *N. J. S. A.* 2A:68–4, and of filling vacancies. *N. J. S. A.* 2A:68–6. In an emergency the

[1]County clerks, surrogates and sheriffs shall be elected by the people of their respective counties at general elections. The term of office of county clerks and surrogates shall be five years, and of sheriffs three years. Whenever a vacancy shall occur in any such office it shall be filled in the manner to be provided by law. [*N. J. Const.* (1947), Art. VII, § II, par. 2]

Sheriffs and coroners shall be elected by the people of their respective counties, at the elections for members of the general assembly, and they shall hold their offices for three years after which, three years must elapse, before they can be again capable of serving. Sheriffs shall annually renew their bonds. [*N. J. Const.* (1844), Art. VII, § II, par. 6]

judge before whom a jury is to be drawn may appoint a temporary commissioner. *N. J. S. A.* 2A:68–8. The precise number of persons to appear upon the grand jury and petit jury lists, within statutory limits, is determined by the assignment judge, *N. J. S. A.* 2A:70–1. He also has the power, in his discretion, to strike any name from these lists. *N. J. S. A.* 2A:70–2. After the jury lists have been checked and "are satisfactory to the assignment judge" they are filed with the county clerk and a copy is delivered to the assignment judge. *N. J. S. A.* 2A:70–3. Upon a day and at a time to be fixed by the assignment judge the county clerk and the jury commissioners appear in open court before him, or before a judge designated by him for that purpose, to draw by lot the names of those persons who shall make up the grand and petit jury panels for the stated court session. *N. J. S. A.* 2A:71–1 *et seq.* It rests with the assignment judge to decide whether in those counties where it is permitted, electromechanical devices shall be used in drawing jury panels. *N. J. S. A.* 2A:71–3.1. He may also, in his discretion, divide the general panel into two or more separate panels and designate the court and place in which each separate panel shall serve, and may decide that a jury panel shall remain in attendance only during a designated part of a stated session of court. *N. J. S. A.* 2A:71–8 and 9. When, for any reason, a general panel of petit jurors has not been selected at the time and in the manner provided by law, the assignment judge may order the selection of a panel forthwith, *N. J. S. A.* 2A:71–10, and, significant to the issue here involved, if inadequate notice or no notice has been given the prospective jurors, then the assignment judge may direct that notice shall be given. "Notice given in accordance with his direction shall be legal and valid for all purposes." *N. J. S. A.* 2A:71–11. There is nothing to suggest that the giving of such notice need involve the sheriff. Finally, the actual summoning of jurors is specifically provided for as follows:

Every grand and petit juror shall be summoned by the sheriff, his deputy, or by an elisor or by a peace officer or officer of a court deputized for that purpose. The summons shall be by notice in writing, under the hand or hands of the summoning officer or officers, served at least 30 days before the day on which such juror is required to appear. It shall require the person therein summoned to appear before a specified court at such time and place as shall be expressed therein, to serve upon a jury.

Each person drawn for jury service may be served personally or by leaving the same at the dwelling house of such juror, or by registered or certified mail addressed to such juror at his usual residence or business address. *Unless the assignment judge specifically orders that another method be used, each person drawn for jury service shall be served by registered or certified mail addressed to such juror at his usual residence or business address. If the addressee refuses to claim or to accept delivery of the registered or certified mail, service may be made personally or by leaving the same at the dwelling house of such juror.* Where service is made by mail, the summoning officer shall attach to his return the addressee's receipt for the registered or certified summons. Service by mail is complete upon mailing. [*N. J. S. A.* 2A:72–5; emphasis added]

The italicized portion of the foregoing enactment was added by *L.* 1971, *c.* 415, which became effective January 20, 1972, some time after the entry of the order which is here under attack. It is especially significant to note the reference, appearing in the amendment, to the assignment judge, the clear implication of which is that the decision as to method of service, whether to be made personally or by mail, and whether to be undertaken by the sheriff or by some other court appointed officer, is understood to rest with him.

While, as we have outlined above, there are clear statutory grounds for the action taken by the Assignment Judge, yet because of the importance of the question, we refer briefly to another and more fundamental basis for the power of the assignment judge.

The Constitution of 1947 provides that "[t]he Supreme Court shall make rules governing the administration of all courts in the State * * *" *N. J. Const.,* Art. VI, § II, par. 3. Clearly the selection and summoning of jury panels plays an important and vital role in the administration of the court system throughout the State. Thus the mandate of

the Constitution reposes in the Supreme Court the responsibility to see that all aspects of jury procedure—so uniquely vital to our system of judicial administration—are preserved, maintained and developed to play their essential part in meting out justice. It is in discharge of this responsibility that certain of our rules of court dealing comprehensively with jury procedures have been adopted. These concern, for instance, when a trial by jury may be waived, the number of persons who, by stipulation of the parties, may compose a jury, how prospective jurors are to be examined, the number of challenges available to each party, how a foreman is to be designated, when the petit jury list shall be made available, when juries are to be sequestered, what documents may be taken to the jury room, how a jury verdict is to be returned and when jurors may be polled. *R.* 1:8–1 to 1:8–10. The supervision of jury commissioners and the selection of grand and petit jurors are under the constant supervision of the assignment judge in each county by virtue of R. 1:33–3(a)(2). This constitutional power, resting in the Supreme Court and by it delegated to the assignment judge, affords an independent basis, quite apart from statutory authority, for the action here taken.[2]

What has been said above with respect to summoning jurors is equally applicable to the contention of the Sheriff that it is he and not the Assignment Judge who is to supervise jurors during their attendance at court. This matter, too, rests with the Assignment Judge.

---

[2] The situation with respect to court attendants, although not identical, is somewhat similar. By statute, *N. J. S. A.* 2A:11–32, the sheriff is authorized to appoint as many persons as may be necessary to attend upon the Law Division of the Superior Court and the County Court. But since court attendants play an important role in the administration of the courts of the State, they are, in each county, under the general supervision of the Assignment Judge, *R.* 1:33–3(a) (1), and under the particular supervision of the judge whose court they attend. *R.* 1:33–4(3). Thus in any particular case it would be for the judge to determine the number and qualifications of those attendants whom he may require.

██ We agree with the Sheriff, however, that it is he who should pay the jurors from a fund supplied to him by the county freeholders for that purpose. Here the legislative scheme is clear and should be followed.

Every person summoned as a petit juror in the Superior Court and the County Courts shall receive, for each day's attendance at such courts, to be paid by the sheriff of the county in which the juror shall serve, at the expiration of each term of service or at such other time or times within such terms as the board of chosen freeholders of the county shall direct, the sum of five dollars ($5.00). The board of chosen freeholders of any county may, in its discretion, by resolution reduce the aforesaid amount of five dollars ($5.00) to such an amount as the board may determine. [*N. J. S. A.* 22A:1-1]

The sheriff of each county shall keep a true account of all per diem juror fees and mileage allowance paid by him pursuant to section 22A:1-1 of this Title and shall submit such account for examination to the clerk of the county who shall examine the account and certify the same, if found correct. Upon production of the account, so certified, to the county treasurer, with an affidavit annexed thereto that the account is true and the amount claimed by the sheriff is justly and honestly due to him, the sheriff shall be paid the amount so due him by the county treasurer, which amount the county treasurer shall be allowed in the settlement of his accounts with the board of chosen freeholders.

The sheriff shall provide each juror with a statement of the number of days of his juror service, the amounts of per diem and mileage fees to which he is entitled. [*N. J. S. A.* 22A:1-3]

██ Finally, it is urged that the appellant was denied due process of law because he was not afforded a hearing at which testimony might be taken. We see no occasion for the taking of testimony. In the first place no factual issue was presented. But more importantly, the directive of the Assignment Judge was an administrative order, requiring no preliminary hearing, and as to the validity of which no interested party was entitled to be heard except in the normal course of judicial review. *R.* 2:2-3(a). The fact that Judge Giuliano did in fact afford the Sheriff an opportunity to be heard and, through counsel, to state his objections, in no way altered the fundamental nature of the challenged action. It merely attested to the sensible regard that one public official may have for another when some action taken by

the former may have a discernible impact upon the manner in which the latter shall henceforth discharge his responsibilities. Compare *In re Application of Bigley*, 55 *N. J.* 53, 61 (1969). The ensuing steps taken by the Assignment Judge, looking to the enforcement of his order, seem under the circumstances to have been entirely appropriate.

The order of the Assignment Judge, except as herein modified, is affirmed.

*For affirmance except as modified*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For reversal*—None.