IN THE MATTER OF A SUMMARY INVESTIGATION INTO THE AFFAIRS OF THE CITY OF NEWARK, PURSUANT TO STATUTE.

Decided February 26, 1937.

Before Justice PARKER, at chambers.

For the motion, *Merritt Lane.*

*Contra, Andrew J. Steelman.*

PARKER, J. On October 17th, 1936, an order was made by me upon the petition of twenty-five freeholders for a summary investigation into the affairs of the city of Newark, pursuant to the statute in such case made and provided. I think the last enactment by the legislature is *Pamph. L.* 1930, *p.* 594, but there has been a series of these acts from time to time beginning in 1879 (2), 1881 (114), 1898 (155), 1907 (12), 1908 (383) and 1911, page 620. The act of 1898

appears to have been repealed but it is unnecessary to go into these details. No question has ever been raised with regard to the existence of the legislation, or at this time as to its constitutionality, nor that the order was properly made.

The investigation has been in progress since the date of the order. In the course of that investigation a lawyer named Irving Mandelbaum was subpœnaed as a witness, attending before the commissioner appointed by me, Mr. Warren Dixon, Jr., and was then asked certain questions as regards some of his personal papers, including bank statements and canceled checks, which he had been directed by the subpœna to produce. He refused then to answer any questions relating to these matters on the ground that it was an intrusion into his private affairs and that he had a constitutional right to refuse. I think it appears from the transcript that he did not refuse on the ground that the evidence might tend to incriminate or degrade him. These matters occurred on February 9th and 10th. Thereupon an order was made and served requiring Mandelbaum to appear before me on the 13th and produce the records in question. He did appear, represented by counsel, who then moved, first, that the subpœna directing Mandelbaum to appear be vacated; secondly, that a subpœna to the Union National Bank of Newark, its officers, &c., to produce Mandelbaum's accounts with the bank be vacated; thirdly, that the order that Mandelbaum appear with his books and papers before me be vacated; fourthly, that in case these motions were denied, a writ or writs of *certiorari* be allowed to bring up these several denials. I conclude that all these motions should be denied.

The burden of the argument on the general question as to whether Mandelbaum should be required to testify and produce his records was that it plainly appeared that the answers to these questions, and the records themselves, were not relevant to an inquiry under the statute which, as claimed, is restricted to the question whether in the language of the statute "the moneys of such * * * city * * * are being or have been unlawfully or corruptly expended." But I am unwilling to take so limited a view of the matter.

The statute in question dates in this state from 1879 as noted above. A similar act was passed in the same year in New York. The New York statute was in existence in 1892 (laws of 1892, chapter 685), and also in 1879 (laws of New York, 1879, chapter 307); and the first part seems to be identical word for word with our New Jersey statute; that is, so far as relates to conferring jurisdiction on the judge to act. The statute of 1892 is reprinted apparently in full in the case of *Matter of Taxpayers of Plattsburg*, 157 *N. Y.* 78 (at *pp.* 81, 82), and reads as follows: "If twenty-five free-holders in any town or village shall present to a justice of the Supreme Court of the judicial district in which such town or village is situated, an affidavit, stating that they are free-holders and have paid taxes on real property within such town or village within one year, that they have reason to believe that the moneys of such town or village are being unlawfully or corruptly expended, and the grounds of their belief, such justice, upon ten days' notice to the supervisor, and the officers of the town disbursing the funds to which such moneys belong, or the trustees and treasurer of the village, shall make a summary investigation into the financial affairs of such town or village, and the accounts of such officers, and, in his discretion, may appoint experts to make such investigation, and may cause the result thereof to be published in such manner as he may deem proper.

"The costs incurred in such investigation shall be taxed by the justice, and paid, upon his order, by the officers whose expenditures are investigated, if the facts in such affidavit be substantially proved, and otherwise by the freeholders making such affidavit. If such justice shall be satisfied that any of the moneys of such town or village are being unlawfully or corruptly expended, or are being appropriated for purposes to which they are not properly applicable, or are improvidently squandered or wasted, he shall forthwith grant an order restraining such unlawful or corrupt expenditure, or such other improper use of such moneys."

It will be observed, first, that under the New York statute the affidavit is required to contain a statement not only that

the freeholders have reason to believe, &c., but also the grounds of their belief; but our act authorizes an order based simply on the affidavit of the freeholders that they have cause to believe, &c., and there does not seem to be any particular provision as to what shall be done in case the unlawful practices are brought to light.

In *Park Ridge* v. *Reynolds,* 73 *N. J. L.* 116, the late Mr. Justice Garrison pointed out that the important function of the affidavit of twenty-five freeholders was to confer jurisdiction on the Supreme Court justice to act. In affirming the judgment in that case, 74 *Id.* 449, the Court of Errors and Appeals overruled the opinion below on the question whether the justice might be obliged, on proper application, to satisfy himself of the truth of the affidavit before acting, but did not impugn its *prima facie* jurisdictional quality. Treating it as a jurisdictional matter, the jurisdiction conferred is not limited to the subject of belief in the affidavit, but extends to "a summary investigation into the affairs" of the municipality; and in view of the absence from our statute of the word "financial" which appears in the New York statute as qualifying the word "affairs," it is legitimately inferable that our legislature preferred not to restrict the scope of inquiry to financial matters, and still less to unlawful expenditures of money. What the statute is principally aimed at is corruption in public office; and this is not confined to improper and illegal expenditure, but is protean in the forms that it may take. In our decisions it is uniformly treated as a beneficial act. The word "affairs" is of broad significance, and I am unwilling to limit it to the jurisdictional condition. I regard the act as remedial, and entitled to liberal construction.

It is true that the title of our act speaks of investigation of "county and municipal expenditures," but it is to be noted that the word "expenditures" is not confined to money, but can be legitimately used in connection with property, effort, time, &c.

Reverting to the particular questions before me, I consider that Mr. Mandelbaum was not justified in refusing to obey the subpœna *duces tecum. In re Lefferts,* 67 *N. J. L.*

172. Nor was he justified in refusing to testify on the ground of irrelevancy or immateriality, and no claim of incrimination is made. As to the Union Bank, I do not understand that it objected to producing the Mandelbaum account, except that it wished his consent. If these witnesses were before a vice-chancellor, or in a law court, and proper objections were made by a party, apart from privilege, the judge would examine the documents and admit or exclude them according as he found them competent or otherwise. We are dealing with a statutory court; and the commissioner is a trained lawyer familiar with the rules of evidence.

The three motions to vacate are denied, as also *allocatur* of *certiorari*. Application for *certiorari* may still be made to the court *in banc*. The witness Mandelbaum is adjudged in contempt, but before proceeding further in that direction, reasonable opportunity will be given to review these findings.

(Note by Reporter: Application for writs of *certiorari* was later made to the Supreme Court sitting *in banc*, and denied.)