IN RE APPLICATION OF THE BURLINGTON COUNTY BOARD OF CHOSEN FREEHOLDERS FOR AN INVESTIGATION OF THE OFFICE OF SHERIFF.

Superior Court of New Jersey
Law Division Burlington County

Decided January 21, 1983.

344

*Michael J. Hogan,* Burlington County Solicitor, for plaintiff.

*Arnold M. Mellk* for defendant (*Katzenbach, Gildea & Rudner,* attorneys).

HAINES, A.J.S.C.

The Burlington County Board of Chosen Freeholders has filed a resolution with the Assignment Judge of Burlington County requesting a summary investigation of the Office of the Sheriff of Burlington County. The resolution states in part that conduct of the Sheriff's Office "has raised serious questions regarding the safety of the public, the judiciary and the expenditure of public funds." It "suggest[s] the need for an independent investigation into the affairs of the Office of the Burlington County Sheriff." The resolution is supported by affidavits and newspaper clippings. They state that union members are being discriminated against; officers are guarding empty cells; applications by prospective employees are being discouraged; sheriff's officers are being used for the private purposes of the sheriff; qualified officers are being denied the right to carry firearms when transporting prisoners; selected employees are being denied the right to use the sheriff's lounge and the county cafeteria; false representations are being made concerning employment openings; process servers are permitted to participate in conflicts of interest; employees are being suspended without cause; women are discriminated against; false information is disseminated to avoid Civil Service regulations and the sheriff has failed to provide the courts with adequate security personnel, such personnel being available and hidden for the purpose of supporting the sheriff's position that he needs more employees.

The resolution relies upon *N.J.S.A.* 40A:5–22, which provides in pertinent part as follows:

A judge of the Superior Court may, in his discretion, make a summary investigation into the affairs of any local unit and appoint an expert or experts to prosecute such investigation whenever

. . . . . . . .

(b) a resolution of the governing body requesting such investigation shall be presented to him.

The court responded to the resolution by issuing an order to the sheriff to show cause why the requested investigation should not be undertaken.

Sheriff Brennan, appearing in opposition to the freeholders' request, argues that he is a constitutional officer, that his office is not subject to an investigation launched by a county board of freeholders and is not a "local unit" as defined by the statute. Finally, he claims that the information upon which the resolution is based is not sufficient to permit the assignment judge to proceed with an investigation.

He has filed a lengthy counter-affidavit with numerous exhibits attached. In it, he denies all of the specific allegations of misconduct providing various explanations. He states that prospective employees are told about the risks and hardships of the job, all of which are real and may be discouraging to applicants; it is his obligation, however, to tell them the facts. He has never intended discouragement and has never discriminated against women or union members. Civil service regulations have always been followed. The only private interest of the sheriff in which his employees are involved is a long-standing program involving the delivery of Christmas baskets to the needy. Any services performed by his employees in this connection do not interfere with their duties. The decision as to what employees may carry guns is a management decision. The exercise of this prerogative has not been discriminatory; many officers, both male and female, are not authorized to carry guns. It is true that employees have been denied the right to use the sheriff's lounge. This is a matter of judgment. It has been

considered advisable to limit that use in order to prevent loafing on the job. It is also true that sheriff's officers are serving process for the county district court and may do so when working for the sheriff. The arrangement, however, has been approved by a succession of Superior Court judges. The fact that sheriff's officers may be guarding empty cells from time to time is not of significance. These cells are empty one moment and filled the next and it is entirely appropriate to have men stationed in them at all times. Finally, the sheriff notes that no grievance has ever been filed by any of his employees, including those who signed the affidavits supporting the freeholders' resolution.

## I. THE SHERIFF—THE DIMENSIONS OF HIS OFFICE

Art. VII, § 2, par. 2 of our Constitution provides that:

County clerks, surrogates and sheriffs shall be elected by the people of their respective counties at general elections. The term of office of county clerks and surrogates shall be five years, and of sheriffs three years. Whenever a vacancy shall occur in any such office it shall be filled in the manner to be provided by law.

Art. VII, § 3, par. 1, provides that:

The Governor and all other State officers, while in office and for two years thereafter, shall be liable to impeachment for misdemeanor committed during their respective continuance in office.

Art. VII, § 3, par. 3 provides that:

Judgment in cases of impeachment shall not extend further than to removal from office, and to disqualification to hold and enjoy any public office of honor, profit or trust in this State; but the person convicted shall nevertheless be liable to indictment, trial and punishment according to law.

While the label "constitutional officer" is appropriately applied to the sheriff, it is meaningful only to the extent that the Constitution provides meaning. In fact, the Constitution does little more than to establish election as the means for becoming a sheriff, while limiting the term of office to three years. Arguably, the sheriff is a "State officer," as that term is used in Art. VII, § 3, par. 1 of the Constitution, so that he may be removed from office by impeachment. It has been so held in *Shusted v. Coyle,* 139 *N.J.Super.* 314 (Law Div.1976), and in

*Doyle v. Warren Cty.,* 15 *N.J.Misc.* 434 (Circ.Ct.1937). He is referred to in those cases as a "public officer in the state government." The Constitution does not otherwise establish the dimensions of the office of sheriff or protect its occupant from investigation, and the fact that he is a "constitutional officer" is of no consequence in the present proceedings. What matters here is whether the sheriff is subject to the statute upon which the freeholders have based their resolution.

It is entirely clear that the Legislature controls the duties of the sheriff and the activities of his office. This conclusion was announced in *State v. DeLorenzo,* 81 *N.J.L.* 613 (E. & A.1911), which rejected the doctrine that

> ... the mention in the Constitution of an office by its titular designation constitutes an implied limitation upon the legislative branch of the government by which it is debarred from enacting any law, the effect of which is to subtract in any way from the powers exercised by the incumbent of such office at the time the Constitution was adopted. [at 618]

The court went on to hold that legislation concerning the means of selecting jurors, which subtracted some powers from sheriffs, "was not prohibited by any limitation expressed in the Constitution, and that none such can be implied from the mention in that instrument of the office of sheriff." No limitation was to be established by judicial implication in connection with a matter upon which the Constitution was silent. Further,

> ... [t]he existence of the constitutional limitation upon the legislative power is to be established and defined by words that are found written in that instrument, and not by reference to some spirit that is supposed to pervade it or to underly it or to overshadow the purposes and provisions expressed in its written language.

> . . . . . . . .

> ... When our Constitution of 1776 was framed, its framers knew that in providing for the appointment of sheriffs, they were dealing with an officer whose functions were not immutable or exclusive, but, on the contrary, were subject to legislative alteration and control. [at 623]

Numerous recent cases have held that sheriffs are subject to legislative enactments. *In re Petit Jury Panels, Essex Cty.,* 60 *N.J.* 554 (1972), held that

. . . The office of sheriff is not a constitutional office in the sense that some provision in the Constitution protects it from legislative change. Rather, the Legislature is entirely at liberty to increase, decrease or modify powers and duties incident to this position. [at 558]

*See, also, Scancarella v. Civil Service Dep't,* 24 *N.J.Super.* 65 (App.Div.1952) (Civil Service Act applies to sheriff's employees); *Caldaro v. Ferber,* 74 *N.J.Super.* 128 (App.Div.1962) (Legislature controls transfer of court attendants); *International Brotherhood of Electrical Workers v. Gillen,* 174 *N.J.Super.* 326 (App. Div.1980) (sheriff entitled only to commissions allowed by the Legislature). Consequently, the Sheriff of Burlington County, and the office he controls, are subject to investigation under *N.J.S.A.* 40A:5–22, if that statute, properly construed, applies to sheriffs.

## II. THE STATUTORY AUTHORITY FOR A SUMMARY INVESTIGATION

*N.J.S.A.* 40A:5–22 is a remedial statute, designed to provide an expeditious method for obtaining an independent review of public financial affairs. Its immediate predecessor, *R.S.* 40:6–1, containing similar provisions, was described in *Tiene v. Jersey City,* 13 *N.J.* 478 (1953), as follows:

The statute here under review or its precursors have been in force for 74 years. These statutes have been consistently construed by the courts as remedial in their nature. They have served the useful purpose of enabling the public to ascertain the true state of municipal expenditures. The necessity for such a remedial statute increases with the complexity of municipal functions and the volume of public expenditures. It overcomes in considerable measure whatever shortcomings in practical effect there may be in the ordinary remedies of the civil law or by grand jury investigation and indictment by reason of the complexity of municipal affairs. An investigation under the statute will disclose whatever information is necessary to end public criticism, if the criticism set forth in the application of the taxpayers is unjust. On the other hand, if the criticism is justified, it will lay the basis for other proceedings, civil and criminal, for the protection of the municipality. [at 494]

In *Application of Ries,* 20 *N.J.* 140 (1955), the court said:

... The summary investigation statute is but one of the several procedural methods that exist in our law to review the acts of a governmental body or a public official and to expose violators of the public trust. It has long been recognized as the simplest and most effective procedure available to the citizens entitled to know the true conditions surrounding finances of their municipality.

It is free from the complications of criminal procedure, the disadvantages of a special charge to the grand jury or a presentment, and the individual expenses incident to a proceeding in lieu of prerogative writ.

. . . . . . . .

... Where there is reasonable cause to believe something is amiss, the public is entitled to know the true facts to satisfy their doubts and either allay further criticism or enable the proper authorities to take appropriate proceedings for the protection of the municipality. [at 159]

*N.J.S.A.* 40A:5–22 authorizes an investigation into "the affairs of any local unit." *N.J.S.A.* 40A:1–1 defines "local unit" as "a county or municipality." Sheriff Brennan therefore argues that he is not a "local unit" because he is not a county or a municipality. It is obvious, however, that an investigation of a "local unit" could not have been intended by the Legislature to include, and only to include, *every* office and department of a particular county or municipality. If the statute were to be so construed, for example, an entire county would have to be investigated when the only public concerns related to its mosquito commission. *Application of Ries, supra,* is illustrative. While the definition of "local unit" was not at issue in that case, the authorized investigation centered upon the construction and operation of a sewage treatment facility. The fact that a "governing body" may request an investigation leads to the same conclusion. The investigation of an entire governmental unit at the request of the body controlling that unit could not have been within the expectations of the Legislature. There is no reason that an investigation of the sheriff's office should not be ordered in a proper exercise of judicial discretion, if that office is a part of county government. The sheriff argues that it is not, that his position as a "constitutional officer" or a "state officer" makes his a state, not a county office. I disagree.

A sheriff is an integral part of county operations. He is elected by the voters of the county. *N.J. Const.* (1947), Art. VII, § 2, par. 2. He acts as agent for the county in hiring his personnel. Although *N.J.S.A.* 40A:9–117 gives him authority to select and employ all necessary personnel, their compensation must be recommended by the sheriff to the board of freeholders,

whose approval is necessary. The sheriff's position has been described consistently as involving an agency relationship. *Sullivan v. McOsker,* 84 *N.J.L.* 380 (E. & A.1913); *State v. Wedin,* 85 *N.J.L.* 399 (Sup.Ct.1914); *Ross v. Hudson Freeholders,* 90 *N.J.L.* 522 (E. & A.1917). In *Scancarella v. Civil Service Dep't, supra,* the court, in discussing sheriff's employees, said:

> ... As soon as the act of selection and employment had been accomplished, the employees immediately became servants of the county invested with all the rights and privileges of the Civil Service Act. [24 *N.J.Super.* at 71]

In *Sullivan v. McOsker, supra,* the court said:

> As soon as the sheriff selects and employs assistants they become servants of that municipality for whom the sheriff is acting, as the agent, and they become amenable for their official misconduct, in the performance of the public duties devolved upon them in their respective positions, to the public. In concise terms, they are minor public officials acting under the supervision of an official of a higher rank or grade. [84 *N.J.L.* at 382]

While the sheriff develops his budget, it is submitted to the board of freeholders for approval. His salary is fixed by the Legislature and paid by the county. *N.J.S.A.* 40A:9–104. The operation of the county jail may be undertaken by the sheriff or the board of freeholders, depending upon the decision of the latter. *N.J.S.A.* 30:8–17, 18 and 19. Under *N.J.S.A.* 22A:4–17, all monies received by the sheriff for services "shall be for the sole use of the county and shall be accounted for regularly to the county treasurer." The quarters in which the sheriff operates are supplied by the county and situate in the county. All of the funds necessary for the operation of his office are supplied by the county. *N.J.S.A.* 40A:9–105, 117.

It is apparent that the sheriff's office is part of a "local unit," the county which that office serves. The Legislature may regulate the conduct of sheriffs and county governments. It may provide investigative machinery for that purpose and has done so in adopting *N.J.S.A.* 40A:5–22. Consequently, the freeholders' resolution properly invokes the jurisdiction of this court, requiring an affirmative response if based upon adequate facts.

*N.J.S.A.* 40A:5–22 is generally regarded as authorizing the investigation of financial affairs since it is part of the Local

Fiscal Affairs Law, *N.J.S.A.* 40A:5–1 *et seq.* The claims here relate primarily to the mismanagement and abuse of personnel. The mishandling of employees, however, may constitute a mishandling of funds from which salaries are paid.

The board of freeholders are directly concerned since *their* employees, paid with *their* monies, are the ones affected, and the requested investigation clearly involves financial affairs to which the statute relates.

 The obligation of the court, when considering a statutory investigation, is addressed in *Application of Ries* and *Tiene v. Jersey City,* both *supra.* Once the resolution of the governing body has been presented, jurisdiction is triggered and discretion must be exercised. A sufficient *prima facie* showing of impropriety must be made before an investigation may be ordered. That requirement is described in *Ries* as follows:

> The evidence upon which the belief of the petitioners is based should be such as would reasonably tend to indicate serious misconduct in municipal affairs. [20 *N.J.* at 158]

> The very nature of the proceedings is indicative of an open investigation where there is doubt about municipal expenditures and reasonable cause to believe that public officials have not lived up to the requirements of the law. The existence of crime is not a prerequisite or in any way an essential part of the preliminary requirements for the institution of this type of probe. [at 159]

*Tiene* merely requires the exercise of "sound discretion" by the court. The decision must be based upon the moving papers and counter-affidavits, if any. Testimony is not to be taken. Affiants may not be cross-examined. Hearsay evidence and newspaper clippings are properly considered. *Tiene, supra,* 13 *N.J.* at 488–489; *Ries, supra,* 20 *N.J.* at 157.

## III. CONCLUSION

 The adoption of a resolution by a substantial public body, the Burlington County Board of Chosen Freeholders, requesting the investigation of a constitutional office, is a significant action. The statute which provides the setting for that action, read literally, authorizes an investigative order on the basis of

the resolution, standing alone. It does not require supporting proofs. It does, however, require the exercise of judicial discretion, and evidence which supports the resolution is helpful when that discretion is exercised. At the same time, the fact of the adoption of the resolution must be given weight.

The sheriff's affidavit establishes numerous factual disputes. It is arguable that his proofs are much stronger than those presented by the board of freeholders. But that is not the test. Were the court required to weigh the evidence, testimony would be taken, credibility assessed and facts decided. Those procedures are not permitted. The design of the statute is to authorize an investigation in the case of a petition signed by individuals, when their "belief" establishes a *prima facie* case of serious misconduct. I accept, without deciding, that rule as being appropriate when, as here, the request is presented by resolution of a governing body.

In deciding upon the sufficiency of the application, recognition must be given to the fact that proofs are not readily available to support the petition and that hearsay information is acceptable. It must also be considered that the sheriff may be well served by an investigation since it has the potential for clearing his name and his office. Of greatest significance is the fact that the investigation will benefit the public which is entitled to know whether the concerns of the freeholders have validity.

The resolution states that "the conduct of the Sheriff's Office in recent weeks since the opening of the new Courts Facility has raised serious questions regarding the safety of the public, the judiciary and the expenditure of public funds." It also "observes that the recent course of conduct under the direction of the Sheriff's office has caused the wasteful, unwise and potentially unlawful use of public employees paid ... with public funds." These conclusions, and the charges set forth in the supporting affidavits and articles, raise questions of serious misconduct. The counter-affidavit does not destroy the free-

354

holders' proofs or their concerns—it only contradicts them. In the setting provided by the statute, this is not enough. The freeholders have sufficiently established their belief that serious misconduct has occurred in connection with the operation of the Sheriff's Office. I am therefore required to exercise my discretion in favor of the application.

I have requested the Public Advocate to undertake the investigation. He has agreed to do so.