IN RE APPLICATION OF THE BURLINGTON COUNTY BOARD OF CHOSEN FREEHOLDERS FOR AN INVESTIGATION OF THE OFFICE OF SHERIFF.

Argued December 13, 1983—Decided May 6, 1985.

*Arnold M. Mellk* argued the cause for appellant, Office of the Sheriff of Burlington County (*Katzenbach, Gildea & Rudner,* attorneys; *Ezra D. Rosenberg,* on the brief).

*Michael J. Hogan,* Burlington County Solicitor, argued the cause for respondent, Board of Chosen Freeholders of the County of Burlington (*Michael J. Hogan,* attorney; *Michael J. Hogan* and *Cynthia J. Nadolski,* Assistant County Solicitor, on the brief).

PER CURIAM.

This appeal, on certification granted, 94 *N.J.* 587 (1983), calls for interpretation of *N.J.S.A.* 40A:5–22, a section of the Local Fiscal Affairs Law, *N.J.S.A.* 40A:5–1 to –42, that has been on the books in one form or another for over a century. See *North Bergen Township v. Gough,* 107 *N.J.L.* 424, 427 (Sup.Ct. 1931). In its current form the statute permits a judge of the Superior Court, in his discretion and in response to a petition of twenty-five taxpayers or a resolution of the governing body, to make a summary investigation into the affairs of any local unit.

The Burlington County Board of Chosen Freeholders (Board) filed a resolution with the Assignment Judge requesting a summary investigation into the "affairs of the office of the

Burlington County Sheriff", to the end that "alleged irregularities" in the operation of that Office might be "independently and impartially" explored. Judge Haines determined that the investigation should go forward, *In re Burlington County Freeholders Bd.*, 188 *N.J.Super.* 343 (Law Div.1983), and that it should be undertaken by the Public Advocate. *Id.* at 354. The Appellate Division affirmed, "substantially for the reasons expressed by Judge Haines * * *." 190 *N.J.Super.* 256, 257 (1983). We affirm.

I

Shortly after the opening, in September 1982, of Burlington County's new Courts Facility there surfaced charges and counter-charges between Sheriff Francis Brennan and members of his staff, generally concerning security in the new courtrooms and particularly the Sheriff's handling of security officers assigned to the new facility. In time the dispute attracted the attention of the public press, which reported judges' complaints about the lack of a sufficient number of guards assigned to the task of transporting prisoners, officers' charges of manipulation of personnel designed to support the Sheriff's claimed need for more manpower, and details of an escalating dispute between the Board and the Sheriff. An editorial suggested that the Sheriff's tactics resulted in a waste of taxpayers' money.

In response to these and other complaints the Board, on the advice of the County Solicitor, obtained affidavits from nine former and current Sheriff's office employees. Those affidavits, together with press clippings and a memorandum from the County Clerk to Sheriff Brennan, were attached to a resolution of the Board calling for an investigation. As recited by Judge Haines,

> [t]he resolution states in part that conduct of the Sheriff's office has raised serious questions regarding the safety of the public, the judiciary and the expenditure of public funds. It suggest[s] the need for an independent investigation into the affairs of the office of the Burlington County Sheriff. The resolution is supported by affidavits and newspaper clippings. They state that union members are being discriminated against; officers are guarding empty

cells; applications by prospective employees are being discouraged; Sheriff's officers are being used for the private purposes of the Sheriff; qualified officers are being denied the right to carry firearms when transporting prisoners; selected employees are being denied the right to use the County Sheriff's lounge and the County cafeteria; false representations are being made concerning employment openings; process servers are permitted to participate in conflicts of interest; employees are being suspended without cause; women are discriminated against; false information is disseminated to avoid Civil Service regulations; and the Sheriff has failed to provide the courts with adequate security personnel, such personnel being available and hidden for the purpose of supporting the Sheriff's position that he needs more employees. [188 *N.J.Super.* at 345.]

The statute in question, *N.J.S.A.* 40A:5–22, reads in full as follows:

A judge of the Superior Court may, in his discretion, make a summary investigation into the affairs of any local unit and appoint an expert or experts to prosecute such investigation whenever

a. a petition for such investigation shall be presented to him, signed by 25 freeholders, who have paid taxes on real estate located within the local unit within 1 year, and such petition sworn to and subscribed by them sets forth that they have cause to believe that the moneys of such local unit are being, or have been, unlawfully or corruptly expended, in which case, at least 10 days' notice of the hearing thereon shall be given to the disbursing officer and the governing body of the local unit; or

b. a resolution of the governing body requesting such investigation shall be presented to him.

Upon receipt of the Board's resolution the trial court ordered the Sheriff to show cause why the investigation should not be conducted. After preliminary argument on the order the court concluded that "the arguments advanced against pursuit of the resolution are not successful." It therefore furnished the Sheriff with copies of the supporting material that had accompanied the resolution, so that the Sheriff would have an opportunity to file counter-affidavits. A date was set for argument on the question of "whether [the court's] discretion should be exercised in the direction of ordering the requested investigation, that argument to be limited to the issue of whether the supporting proofs are such as to require that action."

The Office of the Sheriff then filed a counter-affidavit, characterized by the trial court as "substantial," addressing each of the assertions contained in the Board's resolution and in the

materials that accompanied the resolution. The trial court summarized the contents of the Sheriff's document:

In it, he denies all of the specific allegations of misconduct providing various explanations. He states that prospective employees are told about the risks and hardships of the job, all of which are real and may be discouraging to applicants; It is his obligation, however, to tell them the facts. He has never intended discouragement and has never discriminated against women or union members. Civil service regulations have always been followed. The only private interest of the Sheriff in which his employees are involved is a long-standing program involving the delivery of Christmas baskets to the needy. Any services performed by his employees in this connection do not interfere with their duties. The decision as to what employees may carry guns is a management decision. The exercise of this prerogative has not been discriminatory; many officers, both male and female, are not authorized to carry guns. It is true that employees have been denied the right to use the Sheriff's lounge. This is a matter of judgment. It has been considered advisable to limit that use in order to prevent loafing on the job. It is also true that Sheriff's officers are serving process for the District Court and may do so when working for the Sheriff. The arrangement, however, has been approved by a succession of Superior Court judges. The fact that Sheriff's officers may be guarding empty cells from time to time is not of significance. These cells are empty one moment and filled the next and it is entirely appropriate to have men stationed in them at all times. Finally, the Sheriff notes that no grievance has ever been filed by any of his employees, including those who signed the affidavits supporting the Freeholders' resolution. [188 *N.J.Super.* at 346–47.]

At the argument on whether the court's discretion should be exercised in favor of an investigation, the Sheriff contended that *N.J.S.A.* 40A:5–22 is not applicable to his office because the Sheriff is not a "local unit" as defined by statute but rather is a "public officer in the state government"—this, because he is a constitutional officer created by the New Jersey Constitution of 1947, article 7, section 2, paragraph 2. The Sheriff argued further that an order permitting an investigation to go forward would amount to an abuse of discretion because the claims upon which the resolution was based were not connected to the unlawful or corrupt expenditure of public funds; that other courts and administrative agencies had primary jurisdiction over the claims raised; that the claimants had failed to exhaust their administrative remedies; that the allegations were not of serious misconduct; that the claims were stale; and

that the claims concerned decisions of the Sheriff within his managerial prerogative.

Although the trial court concluded that the Sheriff's proofs were at least arguably "much stronger" than the proofs presented by the Board, it nevertheless exercised its discretion in favor of the application for an investigation. 188 *N.J.Super.* at 354. In his comprehensive opinion Judge Haines held that the Constitution did not protect the occupant of the sheriff's office from investigation, *id.* at 348; that the statute should be construed to apply to sheriffs and to encompass the claims set forth in the Board's resolution, *id.* at 349–50; and that none of the Sheriff's contentions stood in the way of an investigation of his office, *id.* at 352–54. Because the members of the Board had "sufficiently established their belief that serious misconduct had occurred in connection with the operation of the Sheriff's office", Judge Haines exercised his discretion in favor of the application, *id.* at 354, a result with which the Appellate Division agreed, 190 *N.J.Super.* at 257, as do we. Our affirmance of the judgment below is based substantially on the reasoning of Judge Haines as supplemented by the following discussion.

## II

Before addressing the problem of interpreting the operative statute, *N.J.S.A.* 40A:5–22, we take up the Sheriff's contention that his status as a constitutional officer puts his office beyond the reach of the statute. The few cases that discuss the significance of the sheriff's constitutional status are not unanimous in defining the relationship of that office to the county; but we conclude that the weight of reason and authority support the view that the sheriff and his office are part of county government.

We note first that the sheriff's office is referred to by name in the Constitution only in connection with the manner of his election (by the people of the county at general election) and the

term of office (three years). See *N.J. Const.* of 1947, art. 7, § 2, ¶ 2. That hardly lends support to the contention that the sheriff cannot, for purposes of the statute under review, be considered a part of the county structure, or that he must be looked upon as a state employee exclusively. As with other officials, the sheriff may serve two masters, depending on what function he is performing. See *Dunne v. Fireman's Fund Am. Ins. Co.*, 69 *N.J.* 244, 250 (1976) (county detectives were agents of State for purposes of executing affidavit in support of search warrant and of conducting search, but were employees of County for certain administrative and remunerative purposes).

In this connection we find significant the organizational scheme adopted by the legislature in the arrangement of the statutes. The enabling legislation pertaining to sheriffs is found in Laws of 1971, chapter 200, the preamble of which identifies the enactment as "[a]n Act covering county and municipal officers and employees * * *." Section B, entitled "Counties," contains the statutes concerning eligibility for the office of sheriff (codified at *N.J.S.A.* 40A:9–94); the sheriff's oath (*N.J.S.A.* 40A:9–96); the effect of the failure of the sheriff-elect to qualify (*N.J.S.A.* 40A:9–101); vacancy in the office of sheriff (*N.J.S.A.* 40A:9–102); bond and oath of appointee to fill vacancy in the office of sheriff (*N.J.S.A.* 40A:9–103); salary of sheriff in certain counties (*N.J.S.A.* 40A:9–104); expenses payable to sheriffs (*N.J.S.A.* 40A:9–105); uncollected fees credited to account of former sheriff (*N.J.S.A.* 40A:9–106); sheriff to deliver to his successor certain moneys and papers (*N.J.S.A.* 40A:9–107); prohibition on sheriff holding other civil office (*N.J.S.A.* 40A:9–108); amercement of sheriff or acting sheriff (*N.J.S.A.* 40A:9–109); court-designation of enforcement officer when amercement occurs (*N.J.S.A.* 40A:9–110); and bonds taken by the sheriff (*N.J.S.A.* 40A:9–111). The legislature's system of referring to the office of sheriff lends support to the conclusion that the sheriff can indeed be—and is here—a part of the county government, a conclusion that is shared by the

Attorney-General. See *Op. Att'y Gen.* No. 27 (September 23, 1955) at 260–62 (county sheriff and his employees should be regarded as county employees).

Case law, although, as pointed out, not unanimous, leads to the same result. In *State v. DeLorenzo,* 81 *N.J.L.* 613 (E. & A.1911), the issue turned on the constitutionality of a statute that shifted from the sheriff to a judge of the Common Pleas the power to appoint jurors. The sheriff argued that because his election was provided for in article 7, paragraph 2 of the Constitution, the powers vested in him at the time of the adoption of the Constitution could not be legislatively reduced or altered. 81 *N.J.L.* at 615. The court succinctly stated three views that could be taken of the sheriff's authority under the Constitution:

> At one extreme is the view that sheriffs have such functions only as the legislature may provide under the constitutional requirement that it shall pass "all laws necessary to carry into effect the provisions of this constitution." Article X, section 12. At the other extreme is the view illustrated in the Virtue case [*Virtue v. Freeholders of Essex County,* 67 *N.J.L.* 139 (Sup.Ct.1901)], namely, that the powers of the sheriffs are historical and are unalterable by legislation. Midway between these two extremes is the view that sheriffs are to exercise such historical powers until otherwise provided by the legislature, which, while not the only view that can be taken or necessarily the correct view, is at least a permissible view for the legislature to take. [*Id.* at 620–21.]

The court chose the middle ground, expressly overruling *Virtue v. Freeholders of Essex County,* 81 *N.J.L.* at 620. Justice Garrison observed that the sheriff's office was mentioned in the Constitution only in connection with the manner and term of appointment, *id.* at 624; therefore, the Constitution's mere mention of the office placed no prohibition on the legislature's authority to alter or affect the sheriff's powers by enacting statutes such as the one considered by the *DeLorenzo* court. *Id.* at 625; *see also In re Petit Jury Panels: Essex County,* 60 *N.J.* 554, 558 (1972) (legislature is free to increase, decrease, or modify the powers and duties incident to the sheriff's office). *DeLorenzo,* then, may be read to allow the legislature to provide for summary investigations of the sheriff's activities.

Whether the legislature did provide for such summary investigations through section 40A:5–22 turns in part on the nature of the sheriff's relationship with the county that he serves. In *Ross v. Freeholders of Hudson County*, 90 *N.J.L.* 522 (E. & A.1917), the court held that the sheriff's relationship with a guard in the Hudson County jail was subject to certain provisions of the Civil Service law. Justice Garrison stated that the legislature had made the sheriff an agent of the county for these purposes. *Id.* at 527. More recent authority likewise supports the proposition that a sheriff falls within the auspices of the county. See *Ritter v. Castellini*, 173 *N.J.Super.* 509 (Law Div.1980), involving a suit against the sheriff for negligent loss of levied-upon property, where the court stated that a sheriff is "an agent of the law and is a ministerial officer of the court." *Id.* at 513; *see also Crater v. County of Somerset*, 123 *N.J.L.* 407, 409 (E. & A.1939) (holding that legislature intended that county clerk be an officer of the county, stating also that "[s]heriffs are in like manner classified.").

The case law in the other direction, classifying the sheriff as a state official, may be found in *Doyle v. County of Warren*, 15 *N.J.Misc.* 434, 192 A. 390 (Cir.Ct.1937), and *Shusted v. Coyle*, 139 *N.J.Super.* 314 (Law Div.1976). The question in *Doyle* centered on the constitutionality of an act that authorized a reduction in the sheriff's salary. In holding that the statute was unconstitutional, the court said that "[i]t is sufficiently clear that a sheriff, although chosen by the voters to serve in a county, is a public officer in the state government." 15 *N.J.Misc.* at 436, 192 A. 390. More recently, a trial court in *Shusted v. Coyle, supra*, 139 *N.J.Super.* 314, relied on *Doyle* to conclude that "[t]he office and term of sheriff are created and fixed by the Constitution making the sheriff a public officer in the State Government even though chosen by voters to serve in the county." *Id.* at 316–17. The persuasiveness of *Shusted*, particularly in view of its holding—that a sheriff can be removed only by impeachment—is weak, and strong criticism has been levelled at the case in another Law Division opinion. See *State v. Musto*, 187 *N.J.Super.* 264,

291–92 (1982). To the extent that *Doyle* and *Shusted* fail to support our conclusion that the sheriff and his office are part of the county for purposes of *N.J.S.A.* 40A:5–22, we reject them as authority.

### III

The next questions are whether *N.J.S.A.* 40A:5–22 authorizes investigations of sub-units of government; what subjects are contemplated by such an investigation; and what standards should guide the court in determining whether to proceed with a summary investigation under section b. of the statute.

The Sheriff reads the statute as requiring that any investigation that may be undertaken be directed at the entire local unit—here, the County—rather than at one of its sub-units—here, the Sheriff's office. We dwell on the issue only briefly.

The statute refers to "a summary investigation into the affairs of any local unit * * *." By definition, a local unit means a county or municipality. *N.J.S.A.* 40A:1–1. The Board contends, and we agree, that an absurd result would flow from a requirement that each time a question was raised about a unit within a county or municipality, the entire county or municipality had to be investigated. The proposition is so untenable as to make it highly unlikely that it reflects the legislative will. We will not read the statute literally if, as here, such a reading would lead to a result that contravenes the legislature's purpose. *See, e.g., Piscataway Township Bd. of Educ. v. Caffiero*, 86 *N.J.* 308, 317 (1981); C. Sands, 2A Sutherland, *Statutory Construction* § 46.07 (4th ed. 1973). We therefore conclude that any investigation need not embrace the entire local unit but may be limited to one or more of its sub-parts, including the office of sheriff.

The next inquiry is whether any investigation must be limited to allegations concerning the unlawful or corrupt expenditure of public funds. The Sheriff argues that the vast majority of

the allegations supporting the Board's request for an investigation have nothing to do with misuse of public monies, and that "[n]o reported case concerning *N.J.S.A.* 40A:5–22 or its predecessor statutes has ever centered upon allegations even remotely similar to those at bar."

We first observe, as did Judge Haines, that the Board's claims here related primarily to the mismanagement and abuse of personnel, which may involve a mishandling of funds from which salaries are paid. 188 *N.J.Super.* at 352. The members of the Board are directly concerned, inasmuch as *"their* employees, paid with *their* monies, are the ones affected, and the requested investigation clearly involves financial affairs to which the statute relates." *Id.*

Beyond that, however, we adopt the view expressed in *In re Newark,* 118 *N.J.L.* 533 (Sup.Ct.1937), that the statute should be liberally construed and that any investigation need not be restricted to expenditure of public funds. Justice Parker declared:

> [T]he jurisdiction conferred * * * extends to a "summary investigation into the affairs" of the municipality; and * * * it is legitimately inferrable that our legislature preferred not to restrict the scope of inquiry to financial matters, and still less to unlawful expenditures of money. What the statute is principally aimed at is corruption in public office; and this is not confined to improper and illegal expenditure, but is protean in the forms it may take. * * * I regard the act as remedial, and entitled to liberal construction.
>
>      *      *      *      *      *      *      *      *
>
> [T]he word "expenditures" is not confined to money, but can be legitimately used in connection with property, effort, time, &c. [*Id.* at 536.]

*See also Application of Ries,* 20 *N.J.* 140, 158 (1955) ("The evidence upon which the belief of the petitioners is based should be such as would reasonably tend to indicate serious misconduct in municipal affairs."); *In re Wellhofer,* 137 *N.J.L.* 165, 174 (Sup.Ct.1948) (citing *In re Newark, supra,* with approval). Certainly if investigation into "serious misconduct" is contemplated by section a. of the statute—and we agree, as decided in the foregoing cases, that it is—*a fortiori* it is within the reach of section b., which, unlike section a., makes no

reference to unlawful or corrupt expenditure of moneys but speaks only of an investigation into the affairs of a local unit.

The general purpose of the enactment is not to charge an offense, not to bring about a trial of a criminal or quasi-criminal complaint, but rather to allow a summary investigation into the affairs of a local unit of government. *See North Bergen Township v. Gough,* 107 *N.J.L.* at 427. True, the investigation may frequently include "an effort to ascertain the truth of a charge involving the swindling of the government out of its money," *id.* at 427, but we conclude that it can very well go beyond that subject to probe the "protean" forms that governmental corruption or mismanagement may assume. *In re Newark, supra,* 118 *N.J.L.* at 536. The Board's allegations as contained in its resolution, raising, as they do, "serious questions regarding the safety of the public, the judiciary and the expenditure of public funds", *supra* at 94–95, are well within the contemplation of the statute.

More troublesome, perhaps, is the problem raised as to the applicable standard for a trial judge's decision on whether to institute an investigation under section b. of the statute. Whereas under section a. the freeholders (taxpayers) who present the petition must assert that "they have cause to believe that the monies of such local unit are being, or have been, unlawfully or corruptly expended," section b. requires no more than presentation to the judge of "a resolution of the governing body requesting such investigation * * *." The case law has addressed only applications under section a. or its predecessors. See *Application of Ries, supra,* 20 *N.J.* 140; *Tiene v. Jersey City,* 13 *N.J.* 478 (1953); *Park Ridge v. Reynolds,* 74 *N.J.L.* 449 (E. & A.1907); *In re Wellhofer, supra,* 137 *N.J.L.* 165; *In re Wellhofer,* 137 *N.J.L.* 342 (Sup.Ct.1948); *In re Newark, supra,* 118 *N.J.L.* 533; *North Bergen Township v. Gough, supra,* 107 *N.J.L.* 424; *In re North Bergen Township,* 91 *N.J.L.* 19 (Sup.Ct.1917); *Hoboken v. O'Neill,* 74 *N.J.L.* 57 (Sup.Ct.1906).

In *Application of Ries, supra,* 20 *N.J.* 140, this Court was presented with the question of whether an application for a summary investigation into Delaware Township's affairs, primarily in connection with the operation and construction of a sewage treatment plant, was properly dismissed. In reaching the conclusion that the dismissal was improper, the Court held that it was error for the trial judge to have taken testimony in open court from witnesses representing both the petitioners and the township. The sole requirement, according to Chief Justice Vanderbilt, was that the petitioners set forth that they had cause to believe that their municipality's financial affairs were being unlawfully or corruptly mismanaged. There follows this instructive passage:

> Once the court has determined the existence of these jurisdictional factors the discretion of the court is to be exercised. Any preliminary trial of the alleged charges with its incidents of cross-examination and rebuttal prior to the decision of the court to make a summary investigation is premature and has the tendency to devitalize an otherwise effective mechanism. The instant case furnishes a good example. As we said in *In re Tiene,* 13 *N.J.* 478, 490 (1953), "on the return of the order to show cause the municipality may, of course, submit affidavits in denial or in explanation of the applicant's charges." The inquiry, if any, should be limited to the determination of whether or not the court is being imposed upon by the petitioners, *Park Ridge v. Reynolds,* 74 *N.J.L.* 449 (E. & A.1906). Nothing more is required to weigh the discretion of the trial judge in favor of the investigation than proof of the *prima facie* existence of reasonable "cause to believe that the moneys of such municipality or county are being, or have been, unlawfully or corruptly expended."

> [id. at 145.]

It thus appears that even if the section a. standards must be met before the judge may make a summary investigation in response to a section b. resolution, the Board's resolution and supporting documents in this case satisfied these standards and established at least a *prima facie* case under *Ries.* The Sheriff's counter-affidavit tends to refute that *prima facie* case but surely cannot be said to destroy it.

The question becomes whether, in the face of the respective disputatious contentions, the judge abused his discretion in deciding to go forward with a summary investigation. We think not. The *prima facie* case had been established. Even though Judge Haines found some of the Sheriff's counter-argu-

ments persuasive, he was not obliged to conclude that they were so forceful that nothing remained of the Board's charges. As Judge Haines pointed out, "[t]he counter-affidavit does not destroy the freeholders' proofs or their concerns—it only contradicts them." 188 *N.J.Super.* at 353–54. Judicial exercise of discretion in favor of an investigation under these circumstances doubtless will serve to clear the air whenever allegations of this kind are made.

The foregoing discussion assumes that the section b. standards for the judge's exercise of discretion are the same as those established in section a. The parties appear to have acted on that assumption. Without deciding the question of whether the same standard applies to the judge's exercise of discretion under both sections, Judge Haines accepted the section a. rule as being "appropriate" when, as in this case, the request for a summary investigation is presented under section b., that is, by resolution to the governing body. 188 *N.J.Super.* at 353.

The history of this statute and its predecessors furnishes no clue as to whether the legislature intended different standards to apply, depending on which section of the statute was brought into play. One cannot tell whether the lawmakers favored citizenry access to the investigative machinery through a taxpayers' petition or whether they felt greater deference should be accorded a governing body's resolution. Arguments can be made on both sides of the question.

We conclude that the same standard should be enforced in respect of a section b. proceeding as is brought to bear under section a.—that is, the governing body's resolution must establish a *prima facie* case of serious misconduct. When no standards are expressed in the statute, they may be reasonably inferred. *See Avant v. Clifford,* 67 *N.J.* 496, 552–53 (1975). Here it is reasonable to conclude that the same standard should be employed irrespective of which section it is that the applicant seeks to invoke: the fact that the two methods of initiating a summary investigation are found in one statutory

section argues in favor of a uniform standard. The Board does not seriously contend otherwise.

As we have seen, the section a. standard of *prima facie* proof was met in this section b. proceeding. Nevertheless, the Sheriff argues that in ordering an investigation Judge Haines not so much abused his discretion as that he failed to exercise any discretion at all. The contention centers on Judge Haines's statement, after his conclusion that the Board had sufficiently established its belief that serious misconduct had occurred in connection with the operation of the Sheriff's office: "I am therefore *required* to exercise my discretion in favor of the application." 188 *N.J.Super.* 354 (emphasis added).

If the quoted statement were intended to convey the thought that a judge *must* exercise his discretion in favor of an investigation once a *prima facie* case is established, that conclusion would be incorrect, for the judge would be free to exercise his discretion by denying the application if the counter-affidavits completely obliterated the allegations of the resolution and supporting papers, or led the court to conclude that it was being "imposed upon." *Park Ridge v. Reynolds, supra,* 74 *N.J.L.* at 450. But it is apparent that Judge Haines intended no such thing, and that all he was saying was that under the circumstances before him, he concluded that his discretion should be exercised in favor of ordering the investigation.

That this was what Judge Haines meant becomes unmistakably clear from his discussion, during the hearing on the order to show cause, of a hypothetical petition that contained only affidavits attesting that because the sheriff wears a red necktie every day, he is a Russian spy, and his office should be investigated. Judge Haines asked: "Wouldn't I be required to exercise my discretion to turn down the petition?" What he meant was that under those circumstances, he would not exercise his discretion in favor of ordering the investigation. His use of the identical term in his opinion—"required to exercise my discretion"—was doubtless intended in a similar vein.

Therefore, his arguably inflexible language was really nothing more than his way of saying that under these circumstances, he will exercise his discretion in favor of ordering the investigation because he thinks the papers are persuasive enough to meet the applicable standard.

## IV

The final issue to be resolved is whether the Public Advocate, whom Judge Haines asked to undertake the investigation, is authorized to do so. We conclude that he is, but we suggest that the Judge might wish to reconsider his decision in this regard in light of the different circumstances that may prevail when the investigation commences.

The Sheriff contends that the act that created the Department of the Public Advocate did not include a grant of authority for conducting investigations under *N.J.S.A.* 40A:5–22. Moreover, he argues that this investigation would be conducted under "compulsion of a court order," in violation of *N.J.S.A.* 52:27E–31. That provision mandates that the Public Advocate shall have sole discretion as to whether to represent the public interest in any proceeding. In response, the Board of Chosen Freeholders stresses that the Sheriff's arguments rely on form over substance, as no claim is even put forth questioning the Advocate's impartiality. The Board further attacks the claim that the Public Advocate has been "ordered" to undertake this investigation, relying on Judge Haines's opinion, which is couched in terms of a "request."

Although the legislature, when it created the Office of Public Advocate, did not specifically consider the Advocate's potential status as an expert under *N.J.S.A.* 40A:5–22, some of the provisions of *N.J.S.A.* 52:27E–1 to –47, as well as of *N.J.A.C.* 15A:1–1.1 to –1.7, can be read as permitting the Advocate to consent to a court request to serve as such an expert. One of the Sheriff's main arguments is that the Office of Citizen Complaints of the Public Advocate, established by *N.J.S.A.*

52:27E–34 as a part of the Division of Citizen Complaints and Dispute Settlement, is the only unit of the Public Advocate specifically granted investigatory powers. Under section 52:27E–36, the Office of Citizen Complaints is authorized to "[i]nvestigate any complaint from any citizen relating to the administrative action or inaction of *any agency* * * *." (emphasis added). The definition of agency, however, specifically excludes "any unit of county or municipal government." *N.J. S.A.* 52:27E–35(a). The Sheriff argues that inasmuch as the only unit of the Public Advocate expressly authorized to conduct investigations is excluded from investigating counties or municipalities, the legislature could not possibly have intended that the Public Advocate be permitted to conduct an investigation of these same entities under *N.J.S.A.* 40A:5–22. Although the Sheriff concedes that the Advocate possesses the authority to appoint investigators in order to conduct its business in certain circumstances, he maintains that only the Office of Citizen Complaints is empowered to investigate as one of its substantive duties. A close reading of the statute and the Administrative Code provisions, however, suggest a contrary legislative intent.

The Department of the Public Advocate is established under *N.J.S.A.* 52:27E–2. Its powers and duties are set forth in *N.J.S.A.* 52:27E–4, which states in part:

> The Public Advocate, as administrator and executive officer of the department, shall:
>
>     *     *     *     *     *     *     *     *
>
> h. Perform, exercise and discharge the functions, powers and duties of the department through such divisions as may be established by this act *or otherwise by law* * * *. (Emphasis added).

The Division of Public Interest Advocacy is established in *N.J.S.A.* 52:27E–28. Its jurisdiction is set forth in *N.J.S.A.* 52:27E–29:

> The Division of Public Interest Advocacy may represent the public interest in such administrative and court proceedings * * * as the Public Advocate deems shall best serve the public interest.

"Public interest" is in turn defined as "an interest or right arising from the Constitution, decisions of court, common law

or other laws of the United States or of this State inhering in the citizens of this State or in a broad class of such citizens." *N.J.S.A.* 52:27E–30. The sole discretion as to whether the Division of Public Interest Advocacy will represent or decline to represent the public interest in any particular proceeding is given to the Public Advocate. *N.J.S.A.* 52:27E–31. Furthermore, the power of the Division of Public Interest Advocacy is defined, in relevant part, as follows:

> The Division of Public Interest Advocacy may represent and protect the public interest by:
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*　　\*
>
> (b) Instituting litigation on behalf of a broad public interest when authorized to do so by the Public Advocate. [*N.J.S.A.* 52:27E–32(b).]

Although it can be argued that *N.J.S.A.* 52:27E–32(b) permits the Public Advocate only to "institute litigation," thereby precluding the conducting of a summary investigation, when read in conjunction with the other provisions mentioned above, a different result is reached. Under *N.J.S.A.* 52:27E–29, the Division of Public Interest Advocacy is permitted to represent the public interest in court proceedings, as determined by the Public Advocate. The authority to decide whether the Division of Public Interest Advocacy shall represent the public interest is clearly one of the powers and duties placed under the Public Advocate's authority. *N.J.S.A.* 52:27E–31. Therefore, we conclude that the Public Advocate can accept a judge's invitation to conduct a summary investigation pursuant to the Advocate's powers under *N.J.S.A.* 52:27E–4(h). In so doing, the Advocate would be "exercis[ing] and discharg[ing] the functions, powers and duties of the department"—namely, those established by *N.J.S.A.* 52:27E–31—through such divisions as may be established by this act *or otherwise by law*—namely, by *N.J.S.A.* 40A:5–22. See *N.J.S.A.* 52:27E–4(h). In this connection we note that in *Hoboken v. O'Neill, supra,* 74 *N.J.L.* 57, in discussing the court's ability to appoint an expert for the summary investigation, Justice Fort noted that the judge can make a preliminary investigation "to see if the public *interests* require that [experts] be appointed." *Id.* at 60 (emphasis added). It

was therefore recognized well before the creation of the Public Advocate that the public interest is a major factor in the decision of whether to appoint an expert.

Another indication that such investigations can be undertaken by the Advocate is found in the Administrative Code. *N.J.A.C.* 15A:1–1.4 elaborates upon the jurisdiction of the Division of Public Interest Advocacy. That section states:

> The division [of Public Interest Advocacy] may represent the public interest in administrative and court proceedings, pursuant to *N.J.S.A.* 52:27E–28 et seq. The scope of representation may include, *but not be limited to, investigations,* negotiations, proposed rulemaking and litigation on behalf of either plaintiff or defendant. Litigation includes intervention in administrative or court proceedings, and amicus representation in such proceedings. [*N.J.A.C.* 15A:1–1.4 (emphasis added).]

Although "court proceeding" is nowhere defined in the statute, it appears that summary investigations would fall within any reasonable definition, inasmuch as such investigations are "at all times within the control of the assignment judge * * *." *Application of Ries, supra,* 20 *N.J.* at 159. Given this, the Code provides that the Public Interest Advocacy division's scope of representation includes investigations. Although one might argue that "on behalf of either plaintiff or defendant" modifies "investigation," and that this summary investigation is neither, but is instead conducted on behalf of the court, a more sensible interpretation is that the "plaintiff-defendant" language modifies only "litigation," both because of the positioning of the words and because "investigations, negotiation" and "proposed rulemaking [hearing]" do not always involve parties denominated "plaintiff-defendant." Furthermore, the "but not be limited to" language furnishes a basis for authorization of such an investigation. See *N.J.A.C.* 15A:1–1.4.

For the foregoing reasons, we conclude that the Public Advocate can conduct the investigation if asked by the Judge to do so.

The Sheriff raises two additional points related to this issue. The first is that if the Advocate conducts the investigation, *N.J.S.A.* 40A:5–22 will be violated because the investigation will

not be within the "complete control" of the court. The Sheriff cites *Ries, supra,* 20 *N.J.* 159, in support of this proposition. The cited passage, however, states that the investigation is at all times within the judge's control. This statement takes into account those investigations in which experts are involved. The judge is in no less of a position of control in the *Ries* sense simply because the investigation is pursued by the Public Advocate.

The second point is that Judge Haines somehow *ordered* the Public Advocate to participate in this investigation. There is no evidence produced by the Sheriff to refute Judge Haines's statement that "I have *requested* the Public Advocate to undertake the investigation. He has *agreed* to do so." 188 *N.J.Super.* at 354 (emphasis added). Therefore, the Sheriff's contention that the Advocate was stripped of his statutorily-mandated discretion merely because he was requested *by a judge* to participate in the matter is without support. The determinative factor remains the discretion of the Public Advocate.

In deciding whether to represent the public interest in any proceeding, the Public Advocate is to look to "the importance of the public interest involved." *N.J.A.C.* 15A:1–1.6(a)1. The degree of importance of the public interest may turn on one or all of the following: whether the issue 1) concerns governmental operations at the county level that, if unresolved, would "impair the quality of governmental services to the citizens affected * * * or otherwise affect the relationships of citizens to government" (*N.J.A.C.* 15A:1–1.6(a)1.ii); 2) has a substantial economic impact on the citizens affected or the county government (*N.J.A.C.* 15A:1–1.6(a)1.iii and iv); or 3) substantially affects the "quality of life for the citizens affected" (*N.J.A.C.* 15A:1–1.6(a)vi). We are not prepared to say—indeed, no one has contended—that in accepting the invitation to conduct the investigation in question, the Public Advocate has not exercised his discretion within the foregoing guidelines.

As a note of caution, however, we suggest that the Judge and the Public Advocate may wish to reconsider the court's request.

Our recommendation flows from a concern that since the original request was made, circumstances may have changed to the extent that the Judge would prefer to have some other expert conduct the investigation. The Public Advocate too should be given the opportunity to review the situation. It may be that fiscal constraints now affect the availability of resources within his office, or that there have been developments that raise concerns within the Office of Inmate Advocacy, established under *N.J.S.A.* 52:27E–10, or that the public interest has taken on a different hue. In making this suggestion we do not intend any signal as to how this question should be resolved. We do no more than propose a fresh look at the problem, based on a wariness borne of the passage of time. Such a review is particularly desirable when, as in this case, resolution of the issue calls for a sensitive exercise of discretion, a nice appreciation of the nuances of the relationships of the parties, and a sober recognition of the unique purposes of the statute.

Affirmed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

*For affirmance and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal* —None.