32 N.J. Super. 150 (1954)
107 A.2d 830
STATE OF NEW JERSEY, PLAINTIFF,
v.
AMERICAN ALKYD INDUSTRIES INC., A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Bergen County Court, Law Division.
Decided September 14, 1954.
*151 Mr. Grover C. Richman, Jr., Attorney-General (Mr. James T. Kirk, Deputy Attorney-General, appearing), attorney for the State.
Mr. Julius E. Kramer (Messrs. Chandless, Weller & Kramer, attorneys), for the defendant.
CAVINATO, J.C.C.
The defendant is charged with violating R.S. 23:5-28 in that on March 14, 1954 it allowed deleterious substances, namely, fuel oil, to run into and pollute fresh or tidal waters at Carlstadt, New Jersey, causing destruction to the wild life inhabiting the same.
At the trial in the Municipal Court of Carlstadt the defendant was found guilty of the charge. The defendant has taken an appeal.
*152 Both parties have agreed to the salient facts. On March 14, 1954 the defendant had a watchman at its plant whose duty was to guard the plant. The watchman had an additional duty of transferring fuel oil by a gravity feed from a 30,000-gallon tank to a smaller tank holding 1,000 gallons.
His responsibility was to open the feed valve and shut it off when the 1,000-gallon tank was filled with fuel oil.
The watchman admittedly left the tank for five minutes, during which time the tank filled, the fuel oil overflowed and ran into a ditch, and from there into Berry's Creek, and did pollute the fresh and tidal waters with a deleterious substance causing death to wild life inhabiting the same.
The defendant is charged with violating R.S. 23:5-28 which statute provides that:
"No person shall allow any dyestuff, coal tar, sawdust, tanbark, lime, refuse from gas houses, oil tanks or vessels, vitriol or any of the compounds thereof, or other deleterious or poisonous substance to be turned into or allowed to run into any of the fresh or tidal waters within the jurisdiction of this State in quantities destructive of life or disturbing the habits of the fish or birds inhabiting the same, under a penalty of five hundred dollars ($500.00) for the first offense, and one thousand dollars ($1,000.00) for any subsequent offense."
The only question in dispute is whether the defendant did allow deleterious substances, i.e., fuel oil, to be turned into or allowed to run into fresh or tidal waters in violation of the statute.
In resolving this question the State urges that the court construe the words of the statute liberally, and the defendant urges that the court construe the words strictly.
The Supreme Court enunciated in the case of State v. Meinken, 10 N.J. 348 (1952):
"* * * so as to promote the public policy of the State in conserving its natural resources and in protecting the safety of its people. In 3 Sutherland Statutory Construction (3rd ed. 1943), § 7214, p. 445 it is stated: `Of great public importance are laws providing for the conservation of natural resources and thus they are given a liberal construction. Statutes of this sort are fish and game laws, and legislation regulating waste of mineral resources.'
*153 * * * Where a law or group of laws are both remedial and penal, as the fish and game laws clearly are, those provisions which are remedial are to be liberally construed and those that are penal are to be strictly construed."
The section of the statute which is in dispute is a penal one. A statute may be both penal and remedial; and its several provisions are to be treated in this regard according to their nature. Edelstein v. Hub Loan Co., 129 N.J.L. 497 (Sup. Ct. 1943).
Following these principles the court shall give to the statute its most apparent and reasonable meaning having in mind the legislative purpose, but without extending its provisions by implication or intendment.
Generally speaking the term "allow" means to permit, suffer, acquiesce. Bouvier's Law Dictionary defines "allow" as "to permit, consent to or approve." Allow is defined in Webster's as "to approve of, to sanction." Also, in 3 Words and Phrases, allow is defined as requiring actual knowledge or consent, "to allow a thing to be done is to acquiesce in or tolerate; knowledge express or implied being essential."
The facts in this case do not conform with this requirement. The defendant took no active part. It did not acquiesce in the act of its employee. Its employee was instructed to shut the valve off when the tank was full. The employee disobeyed his instruction and left his post for several minutes during which time the tank overflowed with fuel oil which found its way into the creek causing damage to wild life.
The act of pollution was not intended; it was an accident. It does not spell out actual knowledge or consent express or implied by the defendant.
If the legislative intendment was to make the act of polluting fresh or tidal water a violation of the statute, per se, regardless of knowledge or consent it would have so stated. This the Legislature did not do.
The judgment of conviction is reversed and the fine remitted without costs.