BIANCO, J.T.C.
This is the court’s determination with regard to a motion for summary judgment filed by Plaintiff, Clorox Products Manufacturing Company (hereinafter “Clorox”) and a cross-motion for summary judgment filed by Defendant, Director, Division of Taxation (hereinafter “Director”).
Clorox seeks a determination that it was entitled to the depreciation deductions reported in its New Jersey Corporation Business Tax Returns (hereinafter “CBT Returns”), for the fiscal years ending June 30, 1998, 1999, and 2000 (hereinafter “Taxable Period”). Clorox also seeks to continue to report and use depreciation deductions calculated in the same manner and on the same basis for future reporting periods. Finally, Clorox seeks an abatement of the post-tax amnesty penalty imposed against it under the provisions of the 2002 Tax Amnesty (L. 2002, c. 6, § 1; N.J.S.A. 54:53-18), and a determination that the penalty is unconstitutional.
The Director seeks to affirm his final determination that Clorox was not entitled to the depreciation deductions it took during the Taxable Period and that the imposition of a five percent post tax amnesty penalty was warranted and constitutional.
For the reasons set forth below, summary judgment is granted in favor of Clorox. The Director’s motion for summary judgment is denied.
The facts are not in dispute. Clorox is a corporation organized under the laws of the State of Delaware, with its principal office in *263 Oakland, California and is engaged in the business of manufacturing laundry and cleaning products in New Jersey. Clorox is a wholly owned subsidiary of The Clorox Company (hereinafter “Parent Corporation”).
The Parent Corporation transferred its manufacturing operations and assets to Clorox on July 1, 1996 in exchange for 100% of Clorox’s stock.[1] The operations and assets transferred consist (in substantial part) of what the parties have described as uncoupled property. As used by the parties, the term “uncoupled property” refers to property placed in service between January 1, 1981 and July 7, 1993 when New Jersey uncoupled the method by which corporations could take depreciation deductions for Corporation Business Tax purposes, from the method of accelerated depreciation by which corporations took depreciation deductions for federal income tax purposes.[2] L. 1982, c. 50; N.J.A.C. 18:7 — 5.2(a)(1)(xii). The transfer of property to Clorox from the Parent Corporation was a tax-free transaction under § 351 of the Internal Revenue Code (hereinafter “I.R.C.”).[3]
The Director conducted an audit of Clorox’s CBT Returns for the Taxable Period. In an assessment issued on December 5, 2002, the Director disallowed Clorox’s straight-line depreciation deductions reported in its CBT Returns based on the carryover basis from the Parent Corporation. The Director further as *264 sessed Clorox interest and a five percent post tax amnesty penalty (N.J.S.A. 54:53-18b) because of the disallowance of the deductions.[4] Clorox filed a protest with the Director. See generally N.J.S.A. 54:49-18.
To illustrate just how Clorox depreciated the assets based upon the Parent Corporation’s actions, Ralph A. Lelie, Conferee, Conference and Appeals Branch of the Division of Taxation, in his certification to the court, provided the following example[5] of “a hypothetical asset with a cost of $100,000 ...” (Lelie Cert. 3.)
1. June 1995: Parent Corporation takes NJ Depreciation of $6,250
2. June 1996: Parent Corporation takes NJ Depreciation of $12,500
3. June 1996: Clorox takes the assets with a depreciable basis of $81,250. Calculation: $100,000 (Hypothetical Asset) - $6,250 {1995 NJ Depreciation) - $12,500 (1996 NJ Depreciation) = $81,250

[Ibid.]

The Director determined that the Parent Corporation should have taken an additional depreciation deduction in its CBT Return for the fiscal year ending June 30, 1996 in the amount of the excess of Federal accelerated depreciation (see e.g., I.R.C. § 168) over straight-line depreciation for the assets transferred to Clorox. The Director maintains that Clorox would then have been permitted to depreciate the transferred assets based on the lesser depreciable basis.[6] Accordingly, since the Parent Corporation did *265 not take the additional depreciation deduction, Mr. Lelie’s Certification illustrates (assuming the same hypothetical $100,000 asset as above) what the Division claims Clorox should have done:
1. June 1995: Parent Corporation takes NJ Depreciation of $6,250
2. June 1996: Parent Corporation takes NJ Depreciation of $12,500
3. June 1996: Parent Corporation takes excess depreciation deduction of $18,250 (Excess ACRS[7] oner NJ Depreciation of Disposed Assets)
4. June 1996: Clorox lakes the assets with a depreciable basis of $63,000. Calculation: $100,000 (Hypothetical Starting Point) - $6,250 (1995 NJ Depreciation) — $12,500 (1996 NJ Depreciation) - $18,250 (Excess ACRS Orer NJ Depreciation ) = $63,000
[Lelie Cert. 3.]
Under Mr. Lelie’s foregoing hypothetical examples, Clorox employed a depreciable basis of $81,250 instead of $63,000 ($18,250 more than what Mr. Lelie determined Clorox was entitled to depreciate under the examples if the Parent Corporation had taken the excess depreciation deduction for the assets in the year of their disposal). In comparing both examples, Mr. Lelie concluded that the Parent Corporation:
essentially passed on its ‘excess depreciation adjustment’ to [Clorox] instead of taking it as an adjusting deduction on (the Parent Corporation’s] final CUT return, contrary to the direction of N.J.A.C. 18.7-5.2(a)(2)(v).
[Lelie Cert. 4 (emphasis added).]
On October 28, 2004 the Director issued a Final Determination Letter affirming the December 5, 2002 assessment, interest, and five percent post amnesty penalty against Clorox totaling $84,924.43 for the Taxable Period. Clorox appealed to the Tax Court. Both Clorox and the Director moved for Summary Judgment.[8]

SUMMARY JUDGMENT STANDARD

It is well settled that when deciding a motion for summary judgment:
*266 the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
[Brill v. Guardian Life Ins, Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995).]
The intent of the Court in Brill was to encourage the granting of a summary judgment motion when the non-moving party relies on implausible fact inferences and unsupported assertions. Id. at 541-42, 666 A.2d 146. The court in Brill further explained that “[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a ‘genuine’ issue of material fact for purposes of Rule 4:46-2.” Id. at 540, 666 A.2d 146. With no material facts in dispute, the Court finds that the immediate matter is ripe for summary judgment.

DEPRECIATION DEDUCTIONS

There is no dispute that the assets transferred to Clorox by the Parent Corporation had been placed in service between January 1, 1981 and July 7, 1993, when New Jersey had uncoupled from Federal accelerated depreciation.[9] The Parent Corporation depreciated the assets on its CBT returns using the straight-line method rather than using the accelerated depreciation allowed by the I.R.C. After the June 30, 1996 transfer, Clorox continued to *267 depreciate the assets on its CBT Returns using the same basis and the same straight-line depreciation method used by the Parent Corporation.
In disallowing Clorox’s straight-line depreciation deductions of $11,470,685, $13,428,162 and $8,791,003, in each respective fiscal year of the Taxable Period,[10] the Director relied on the Corporation Business Tax Act (N.J.S.A. 54:10A-1 to -41 (hereinafter the “Act”), specifically N.J.S.A. 54:10A-4(k)(2)(F)) and N.J.A.C. 18:7-5.2.
Pursuant to N.J.S.A. 54:10A-4(k)(2)(F)(ii), “the director shall promulgate rules and regulations necessary to carry out the provisions of this section, which rules shall provide, among others, the manner in which the remaining life of 'property shall be reported.” N.J.S.A. 54:10A-4(k)(2)(F)(ii) (emphasis added). The annotations to N.J.S.A. 54:10A-1 includes “N.J.A.C. 18:7-1.1 et seq.” under “Administrative Code References.” N.J.A.C. 18:7-5.2(a)(2)(v) reads as follows:
Gain or loss on property sold or exchanged is to be determined with reference to the amount properly to be recognized in determination of Federal laxa] lie income. However, on the physical disposal of recovery property, whether or not a gain or loss is properly to be recognized under the Federal Internal Revenue Code, there shall be allowed as a deduction any excess or there must be restored as an item of income any deficiency of depreciation disallowed under (a) lx above over related depreciation claimed on that property under (a)2iv above. A statutory merger or consolidation shall not constitute a disposal of recovery property.
[Ibid, (emphasis added).]
The Director contends that since:
a “physical transfer of recovery property” did occur . .. [t]he [Act] and governing regulations clearly directed [the Parent Corporation] to make a final depreciation adjustment for the assets it transferred to [Clorox] in 1996. [Clorox] would then have been permitted to depreciate those assets, commencing from the lesser depreciable basis. [The Parent Corporation] failed to make the required adjustment and .. [Clorox] must bear that cost.
*268 [Director’s Br. 22-24 (emphasis added).]
Similarly, Mr. Lelie, as previously indicated, concluded that that the Parent Corporation’s failure to take the excess depreciation adjustment was “contrary to the direction of N.J.A.C. 18:7-5.2(a) (2) (v).” (Lelie Cert. 4 (emphasis added).)
According to the Director:
[t]he .. Act and related regulations were clear and unambiguous in their direction that, absent a “statutory merger or consolidation,” [the Parent Corporation] was required to take an adjusting depreciation deduction for the property it transferred in 1996 [to Clorox] and [Clorox] would therefore have received this property with a reduced “carry-over” depreciable basis. [The] finding in this regard was wholly authorized as well as reasonable, and should be affirmed.
[Director’s Br. 12 (emphasis added).]
The Director argues that his “construction of [the Act] which is not plainly unreasonable and with which the Legislature has not interfered, is entitled to prevail.” Ibid, (citations omitted). The Director therefore maintains that the “long-standing construction of the ... Act, through properly promulgated administrative regulations, is presumptively valid.” (Director’s Br. 11 (citations omitted).)
Clorox contends that the Director incorrectly applied N.J.S.A. 54:10A-4(k)(2)(F)(i) and N.J.A.C. 18:7-5.2(a)(2)(v) in treating the I.R.C. § 351 transfer as a “physical disposal of recovery property” thereby disallowing the depreciation deductions.[11] According to Clorox, the I.R.C. § 351 transfer did not amount to a “physical disposal” because there was no “physical” movement of assets since the assets remained in the same place before and after they were transferred. In the view of Clorox, the I.R.C. § 351 transfer was a “disposal” but not a “physical disposal,” and therefore the same straight-line depreciation method and basis used by the Parent Corporation may be continued, without taking into account the excess depreciation adjustment the Director determined the *269 Parent Corporation should have made for the transferred property.
“Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.” GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993) (citations omitted). “Absent a legislative intent to the contrary, [statutory 1 language is to be given its ordinary meaning.” Id. at 307, 625 A.2d 468 (citations omitted). Consistent with GE Solid State the Appellate Division has held that the “duty of the Director, and this court, is to give meaning to the wording of the statute and, where the words used are unambiguous, apply its plain meaning in the absence of a legislative intent to the contrary.” Sutkowski v. Dir., Div. of Taxation, 312 N.J.Super. 465, 475, 712 A.2d 229 (App.Div. 1998); see also Koch v. Dir., Div. of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999) (holding that “in construing a statute, one must first consider its plain language ... [which] should be read according to its ordinary or general meaning, so long as that reading comports with the statute’s legislative intent. If the statute is clear and unambiguous on its face and admits of only one interpretation, [courts should! delve no deeper than the act’s literal terms to divine the Legislature’s intent.” (citations omitted)); see also Stephen Little Trucking & Stephen Little v. Dir., Div. of Taxation, 19 N.J.Tax 461, 465 (Tax 2001) (“in construing a statute the court is not to be guided by a single sentence or the words of a sentence but must look to the provisions of the whole law, and to its object and, policy. In searching for the true understanding and proper application of a statute the language must be read perceptively and sensibly with a view toward fulfilling the Legislature’s intent.”)(emphasis added) (quoting Cumberland, Arms Assocs. v. Burlington Twp., 10 N.J.Tax 255, 268 (Tax 1988)). Furthermore, principles of statutoiy construction also apply to the administrative code. See Taylor v. Twp. of Lower, 13 N.J.Tax 371, 380 (Tax 1993) (applying the principles of statutory construction to the statute and the administrative code.); see also In re Burlington County Bd. of Chosen Freeholders, 99 N.J. 90, 108-10, 491 A.2d 631 (1985).
*270 There is nothing unclear, ambiguous or incomprehensible about N.J.A.C. 18:7-5.2(a)(2)(v). This regulation is comprised of three interconnected sentences. The first sentence states that:
[g]ain or loss on property sold or exchanged is to be determined with reference to the amount properly to be recognized in determination of Federal taxable income.

[Ibid.]

This sentence informs taxpayers of their obligation where there is a gain or loss on property sold or exchanged.
The second sentence states:
[h]owever, on the physical disposal of recovery property, whether or not a gain or loss is properly to be recognized under the Federal Internal Revenue Code, there shall be allowed as a deduction any excess or there must be restored as an item of income any deficiency of depreciation disallowed under (a)1x above over related depreciation claimed on that property under (a)2iv above.

[Ibid.]

This sentence explains a taxpayer’s obligation by providing an exception to the requirement outlined in the first sentence. Subsections (a)1x[12] and (a)2iv[13] of N.J.A.C. 18:7-5.2 pertain to adjust- *271 merits that must be made to federal taxable income (as defined by that regulation), and not to the excess depreciation deduction now before this court.
Finally, the third sentence provides:
[a] statutory merger or consolidation shall not constitute a disposal of recovery property.
[Ibid.]
This sentence provides an exception to the requirement of the second sentence by explicitly providing for the applicability or non-applicability of the regulation in two situations, i.e. merger or consolidation, where there is no disposal.
The obligations set forth by each sentence of N.J.A.C. 18:7-5.2(a)(2)(v) are interconnected and only make sense when read in conjunction with one another. See Koch v. Director, supra, 157 N.J. at 7, 722 A.2d 918 (stating that “a legislative provision should not be read in isolation or in a way which sacrifices what appears to be the scheme of the statute as a whole. Rather a statute is to be interpreted in an integrated way without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of its pails so as to do justice to its overall meaning.” (citations omitted)).
It is clear to the Court from the plain language of N.J.A.C. 18:7-5.2(a)(2)(v) that any distinction there may be between the terms “physical disposal” and “disposal” is a distinction without a difference. “Physical” is defined as “of or relating to material things.” Merriam-Webster’s Collegiate Dictionary 877 (10th *272 ed.1999). “Disposal” is defined as “the act or process of disposing.” Id. at 335. The court finds that physical disposal and disposal are not distinct terms with different meanings. The court further finds as a matter of fact and concludes as a matter of law that the I.R.C. § 351 transfer from the Parent Corporation to Clorox was a physical disposal of recovery property. Accordingly, the contention of Clorox in this regard is without merit.
However, even though the plain language of N.J.A.C. 18:7-5.2(a)(2)(v) supports the Director’s determination that the I.R.C. § 351 transfer was a physical disposal of recovery property, the court finds nothing within the same language of the same regulation supportive of the Director’s contention that “absent a ‘statutory merger or consolidation’ [the Parent Corporation] was required to take an adjusting depreciation deduction for the property it transferred in 1996 [to Clorox] and [Clorox] would therefore have received this property with a reduced ‘carry-over’ depreciable basis.” (Director’s Br. 12 (emphasis added)). The Director’s interpretation of N.J.A.C. 18:7-5.2(a)(2)(v) patently ignores the word allowed[14] within the terms of such regulation, as in “there shall be allowed as a deduction any excess ... depreciation ...” N.J.A.C. 18:7-5.2(a)(2)(v) (emphasis added).
The same sentence of N.J.A.C. 18:7-5.2(a)(2)(v) that allowed an excess depreciation deduction otherwise disallowed under the cited subsections, also provided that any deficiency of depreciation disallowed under the same subsections must be restored as an item of income. The same mandatory language used in N.J.A.C. 18:7-5.2(a)(2)(v) for restoring an item of income could have been used regarding the excess depreciation deduction. It was not.
This regulation was intended as a benefit to corporations transferring uncoupled property by permitting an excess depreciation deduction for the transferred assets. Contrary to the Di *273 rector’s contention, the plain language of N.J.A.C. 18:7-5.2(a)(2)(v) does not mandate the transferring corporation to take the excess depreciation deduction in the year of transfer. Moreover, if the transferring corporation chooses not to take the excess depreciation deduction, the court finds nothing within N.J.A.C. 18:7-5.2(a)(2)(v) that precludes the recipient corporation from continuing the transferor’s higher depreciable basis in the transferred assets.
While the court recognizes that “substantial deference [is accorded] to the interpretation an agency gives to a statute that the agency is charged with enforcing ... an administrative agency may not, under the guise of interpretation, extend a statute [or regulation] to give it a greater effect then its language permits.” GE Solid State, supra, 132 N.J. at 306, 625 A.2d 468 (emphasis added). Moreover, our Supreme Court has held that:
[T]he principle of deference which applies to administrative policymaking- and fact-finding, [applies] “to a lesser extent to statutory interpretation of an agency.” . . This Court has stated that “[a]n appellate tribunal is .. in no way bound by the agency’s interpretation of a statute or its determination of a strictly legal issue.”
[Amn. Fire & Casualty Co. v. New Jersey Div. of Taxation, 189 N.J. 65, 79, 912 A.2d 126 (2006) (citations omitted).]
Under the clear language of N.J.A.C. 18:7-5.2(a)(2)(v), the court finds that the Parent Corporation was allowed, but not required to take an excess depreciation deduction. Moreover, the Parent Corporation’s decision not to take the excess depreciation deduction did not preclude Clorox from assuming the higher depreciable basis of the transferred assets.
Clorox argues that N.J.A.C. 18:7-5.4(a)(1) “expresses the [Director’s] long-standing policy that no adjustments to the Federal nonrecognition treatment of property transferred pursuant to § 351 are permitted in calculating New Jersey entire net income.” (Reply Br. 7.) Under the pertinent part of N.J.AC. 18:7-5.4(a)(1), “[n]o adjustment to Federal taxable income is permitted ... for ... [g]ains or losses not recognized for federal income tax purposes under [I.R.C. § ] ... 351 or similar sections of the [I.R.C.]” Ibid.
*274 Clorox points to I.R.C. § 362(a) (Basis to Corporations) which provides in pertinent part that “[i]f property was acquired ... in ... a transaction to which [I.R.C. § ] 351 ... applies ... the basis shall be the same as it would be in the hands of the transferor ...” and to I.R.C. § 168(i)(7) (Treatment of Certain Transferees) which provides that:
[i]n a case of any properly transferred in a [§ 351] transaction ... the transferee shall be treated as the transferor for purposes of computing the depreciation deduction ... with respect to so much of the basis ... as does not exceed the adjusted basis in the hands of the transferor.
[I.R.C. § 168(i)(7).]
Accordingly, had the Parent Corporation taken the accelerated depreciation deduction thereby lowering the depreciable basis of the transferred assets, Clorox could not have continued to use the higher depreciable basis.
Clorox maintains that it “followed [the] clear directive [of N.J.A.C. 18:7 — 5.4(a)(1) ] in taking the same basis in the assets as the [Parent Corporation’s] basis, as provided in I.R.C. § 362(a) ... and using the depreciation method and period of the [Parent Corporation] in depreciating the transferred assets, as provided in I.R.C. § 168(i)(7)....” (Reply Br. 7.) According to Clorox:
The Director follows Section 351, yet ... ignores the express cross reference in I.R.C. Section 351(h)(2) which provides: ‘For the basis of stock or property received in an exchange to which this section applies, see sections 358 and 362.’ The Director may not ignore any express reference such as this. See, e.g. Adler v. Director, Div. of Taxation, 20 N.J.Tax 537, 543 (Tax Ct.2003).
[Reply Br. 7-8.]
The court is persuaded by Clorox’s arguments and finds them to be controlling in this matter. Accordingly, the court finds that Clorox properly depreciated the uncoupled property transferred to it from the Parent Corporation.

CONCLUSION

Based upon the forgoing analysis, summary judgment is granted in favor of Clorox. The Director’s motion for summary judgment is denied. In view of the Court’s findings and conclusions herein, there is no need to address the constitutionality of the post *275 tax amnesty penalty assessed against Clorox as such penalty is voided by this decision.
The Clerk of the Tax Court shall enter judgment in accordance with this opinion.

 On March 8, 1996, the Parent Corporation gave Clorox a $1,000 note receivable in exchange for 1,000 shares of Clorox's stock at $1 par value per share.

 This was done because New Jersey did not accept the accelerated asset depreciation methods available to corporations under the Internal Revenue Code. Consequently, a corporation had to depreciate its assets using the straight-line method for its New Jersey CBT Returns. See N.J.S.A. 54:10A-4(k)(2)(F)(i). Effective July 7, 1993, New Jersey "recoupled” State and Federal depreciation under the Corporation Business Tax Act, L. 1993, c. 172.

 See generally I.R.C. § 351(a) ("General Rule. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c) [26 U.S.C.S. § 368(c)]) of the corporation.”).

 N.J.S.A. 54:53-18(b) provides that:
There shall be imposed a 5% penalty, which shall not be subject to waiver or abatement, in addition to all other penalties, interest, or costs of collection otherwise authorized by law, upon any State tax liabilities eligible to be satisfied during the period established pursuant to subsection a. of this section that are not satisfied during the amnesty period.

 A hypothetical example was used in place of the exact figures because it is not possible for the actual depreciation to be properly computed unless the transferor and/or the transferee knows the "placed in service” date for the transferred asset.

 No adjustment was made by the Director on the Parent Corporation's CBT Return for fiscal year ending June 30, 1996 to allow the depreciation disallowed on Clorox’s CBT Returns for the Taxable Period. Clorox recognizes that the Parent Corporation is now barred from amending its CBT return for the tax year ending June 30, 1996.

 Accelerated Cost Recovery System. I.R.C. § 168. See infra n 9.

 The Director originally filed a motion for partial summary judgment which motion was converted to a full summary judgment motion at oral argument without objection.

 "[I]n 1980 Congress adopted depreciation methods allowing taxpayers to take accelerated depreciation deductions (known as the Accelerated Cost Recovery System (ACRS)). In 1982 our Legislature 'uncoupled’ the C.B.T. Act from the federal ACRS provisions, since accelerated depreciation deductions would have resulted in lower tax revenues for New Jersey dining the first years. Thus, for purposes of the C.B.T. Act, the ACRS provisions are nullified. L. 1982, c. 50." Nine Franklin Corp. v. Dep't of Treasury, Div. of Taxation, 13 N.J.Tax 121, 131 n. 3 (Tax 1993) (emphasis added). See also Reuben B. Donnelley Corp. v. Dir., Div. of Taxation, 128 N.J. 218, 224-25, 607 A.2d 1281 (1992) ("Because the CBT Act uses federal-taxable income as the starting point to determine a corporation’s entire net income, N.J.S.A. 54:10A-4(k), ERTA's allowance of safe-harbor leases and accelerated depreciation would have resulted in significant revenue loss to New Jersey. To avoid that loss, the Legislature in 1982 amended the CBT Act." (emphasis added)).

 In 1998, Clorox claimed $21,857,502 in New Jersey depreciation and the Division of Taxation allowed $10,386,817. In 1999, Clorox claimed $18,069,907 in New Jersey depreciation and the Division of Taxation allowed $4,641,745. In 2000, Clorox claimed $11,331,471 in New Jersey depreciation and the Division of Taxation allowed $2,540,468.

 Generally, recovery property is "tangible property of a character subject to the allowance for depreciation ... used in a trade or business, or ... held for the production of income." I.R.C. § 168(c)(1).

 N.J.A.C. 18:7-5.2(a)(1)(x) provides that “[r]ecoveries with respect to war losses, regardless of whether such war losses were deducted in any return previously made for the purpose of computing the New Jersey Corporation Business Tax" must be added to federal taxable income. The court is perplexed by the reference to subsection (a)1x in N.J.A.C. 18:7-5.2(a)(2)(v) as the subject matter of that subsection does not appear to be compatible with the intent and meaning of the overall regulation. The court notes that subsection (a)1xii of N.J.A.C. 18:7-5.2, seems to makes more sense in relation to N.J.A.C. 18:7— 5.2(a)(2)(v). Subsection (a)1xii provides that:
In any year or short period which ends after 1981, with respect to property placed in service on and after January 1, 1981, but prior to taxpayer fiscal or calendar accounting years beginning on or after July 7, 1993, any depreciation or cost recovery (ACRS or MACRS) which was deducted in arriving at Federal taxable income and which was determined in accordance with Section 168 of the [I.R.C.] in effect after December 31, 1980 [must be added to federal taxable income]. See (a)2iv below for depreciation allowable in computing entire net income.
[N.J.A.C. 18:7-5.2(a)(1)(xii).]
Not only does (a)1xii address depreciation but it also references subsection (a)2iv, also referenced in N.J.A.C. 18:7-5.2(a)(2)(v). The Director should review N.J.A.C. 18:7-5.2(a)(2)(v) and determine whether or not subsection (a)1x is properly referenced in that regulation.

 N.J.A.C. 18:7-5.2(a)(2)(iv) provides for a mandatory deduction from federal taxable income, as follows:
*271 In any privilege period or taxable year beginning on or after January 1, 2002, with respect to property acquired on or after January 1, 2002 and before September 11, 2004, any depreciation which was deducted in arriving at Federal taxable income and which was determined in accordance with Sections 168(h) and 1400L of the Federal Internal Revenue Code. Assets acquired before January 1, 2002 for which such depreciation was taken will continue for the entire life of the asset to follow Federal depreciation. Assets acquired in periods beginning before January 1, 2002 will continue to follow Federal depreciation even if the asset itself was acquired after January 1, 2002 but during such fiscal year. Upon early retirement a basis adjustment will be required to equalize Federal and State basis.
[N.J.A.C. 18:7-5.2(a)(2)(iv).]

 As defined by The United States Supreme Court, the definition of allow is "to permit.” Verizon Commc'n Inc. v. Law Offices of Curtis v. Trinko, LLP, 540 U.S. 398, 406, 124 S.Ct. 872, 878, 157 L.Ed.2d 823, 835 (2003); see also New Jersey v. Am. Alkyd Indus., Inc., 32 N.J.Super. 150, 153, 107 A.2d 830 (1954) (stating that "[g]enerally speaking the term ‘allow’ means to permit ...").