The opinion of the court was delivered by
LINTNER, J.A.D.
The Director of the Division of Taxation (Director or Division) appeals the Tax Court’s reversal of a Corporation Business Tax (CBT) Act, N.J.S.A. 54:10A-1 to -41, assessment against Clorox Products Manufacturing Company (Taxpayer) in the amount of $84,924.43 for the years 1998, 1999, and 2000, including a five *225 percent post-amnesty penalty under N.J.S.A. 54:53-18. Taxpayer sought CBT depreciation deductions taken for assets received in a 1996 stock-for-asset swap with its parent, The Clorox Company (Parent), by continuing to report the same straight-line depreciation basis used by its Parent. Disallowing the deduction, the Director determined that Taxpayer, as a separate and distinct corporation, erroneously continued to use and report the asset basis for the transferred property in the same manner as the Parent did, without taking into account the excess depreciation adjustment the Parent should have taken advantage of, but did not, at the time of the transfer.[1]
Taxpayer filed a complaint in the Tax Court, seeking to reinstate the depreciation taken for the three years in question, and challenging the constitutionality of the post amnesty penalty. Following a hearing on cross-motions for summary judgment, Judge Bianco issued a written opinion, finding that the applicable Administrative Code Regulation, N.J.A.C. 18:7-5.2(a)(2)(v), did not require the Parent to take the excess depreciation deduction when the assets were transferred and, therefore, Taxpayer could continue the straight-line depreciation schedule previously used by the Parent, taking advantage of the deduction afforded by that schedule. Clorox Prods. Mfg. Co. v. Dir., Div. of Taxation, 23 N.J.Tax 260, 274-75 (Tax 2006). Judge Bianco further determined that his decision rejecting the Division’s assessment rendered Taxpayer’s constitutional challenge to the post-amnesty penalty moot. Ibid. The Division appeals. We now affirm Judge Bianco’s order vacating the assessment, and dismiss Taxpayer’s cross-appeal as moot.
To understand the issues raised in this appeal, we briefly describe the concept of “uncoupled” depreciation methodology before reciting the relevant undisputed facts. In 1981, the federal government enacted the Economic Recovery Tax Act, which permitted accelerated depreciation under the accelerated cost recov *226 ery system. Because our Legislature was concerned that accelerated depreciation would cause a significant loss of revenue to the State, it enacted legislation that required use of the slower straight-line depreciation method[2] for New Jersey CBT returns, thus “uncoupling” state and federal depreciation methods for determining net income. N.J.S.A. 54:10A-4(k)(2)(F)(i). Uncoupling lasted until July 1993 when the Legislature amended N.J.S.A. 54:10A-4(k)(2)(F)(i), to bring New Jersey into harmony with federal tax laws. Because the assets in question were used during the 1981 to 1993 time period, the uncoupling legislation applies here.
Taxpayer, a Delaware corporation, engages in the business of manufacturing laundry and cleaning products in New Jersey. It is a wholly owned subsidiary of the Parent company. The Parent filed tax returns in New Jersey from 1973 to 1996, using the uncoupled straight-line method to compute the depreciation deductions on its post-1980 CBT returns. Thus, it took a lower depreciation deduction on its pre- and post-uncoupled CBT returns than the accelerated method permitted by the Internal Revenue Code (IRC) and reported a higher basis for its property.
On July 1, 1996, the Parent transferred its manufacturing operations and assets to Taxpayer in exchange for one hundred percent of Taxpayer’s stock. The transfer qualified as a tax-free property-for-stock transaction under Internal Revenue Code (I.R.C.) § 351.[3] It consisted of operations and assets that qualified as “uncoupled property” placed in service between January 1, 1981 and July 7, 1993.
Taxpayer began to transact business in New Jersey on July 1, 1996, and filed its first CBT return for the fiscal year ending June 30, 1997, using the same straight-line depreciation method for the *227 uncoupled assets formerly utilized by its Parent. It continued to depreciate the uncoupled property on the CBT returns for the fiscal years ending June 30, 1998, June 30, 1999, and June 30, 2000, using the straight-line method.
On March 5, 2002, the Division notified Taxpayer that it was conducting an audit of its returns, including the deductions taken for depreciation. On September 25, 2002, the Division informed Taxpayer that, based on the audit, it was adjusting Taxpayer’s CBT returns for 1998, 1999, and 2000[4] to reflect a preliminary assessment of $74,858, based on disallowance of the amount of depreciation Taxpayer took relating to the tax-free transfer.[5]
At the time the Parent filed its final CBT return in 1996, it did not take advantage of the accelerated depreciation deduction permitted under N. J.A.C. 18:7-5.2(a)(2)(v):
Gain or loss on property sold or exchanged is to be determined with reference to the amount properly to be recognized in determination of Federal taxable income. However, on the physical disposal of recovery property, whether or not a gain or loss is properly to be recognized under the Federal Internal Revenue Code, there shall be allmved as a deduction any excess or there must be restored as an item of income any deficiency of depreciation disallowed under (a)lx above over related depreciation claimed on that property under (a)2iv above. A statutory merger or consolidation shall not constitute a disposal of recovery property. (Emphasis added).
On appeal, the Division asserts, as it did before Judge Bianco, that the CBT Act and the related regulations direct that only the Parent is entitled to take the deduction afforded upon the disposal of uncoupled assets and, therefore, Taxpayer was required to take into account the federal accelerated tax basis used for those assets, thus reducing its deduction. In a certification prepared by Ralph A. Lelie, a Conferee,[6] the Division provided a mathematical *228 example to explain its position using a hypothetical uncoupled asset with a cost of $100,000. He explained that if the Parent took New Jersey depreciation of $6250 in 1995 and $12,500 in 1996, the Taxpayer takes the asset with a depreciation basis of $81,250. If, however, the Parent had taken the excess depreciation it should have taken at the time of the transfer, but did not, it would have had additional depreciation of $18,250. The $18,250 deduction represents the excess of the accelerated cost recovery system taken under the IRC from the straight-line depreciation and yields a basis of $63,000. Lelie concluded that the Parent “essentially passed on its ‘excess depreciation adjustment’ ... on [its] final CBT return” to Taxpayer “contrary to the direction of N.J.AC. 18:7—5.2(a)(2)(v),” thus requiring the Taxpayer to commence its depreciable basis at $63,000 rather than $81,250.
In reaching his conclusion, Judge Bianco rejected Taxpayer’s assertion that the transfer did not amount to a “disposal of recovery property” under N.J.AC. 18:7-5.2(a)(2)(v) because there was no physical movement of property. He noted that “physical disposal” and “disposal” are not distinct terms, and that an I.R.C. § 351 transfer from a parent qualified as a physical disposal. He determined, however, that the plain language used in N.J.AC. 18:7-5.2(a)(2)(v) does not support the Director’s contention that in the absence of a “ ‘statutory merger or consolidation’ [the Parent] was required to take an adjusting depreciation deduction for the property it transferred in 1996 ... and [Taxpayer] would therefore have received this property with a reduced ‘carry-over’ depreciable basis.” Clorox, supra, 23 N.J.Tax at 272. He pointed out that the words' “there shall be allowed” in the regulation are not the equivalent of “required to take” and, thus, the Parent was not mandated to take the depreciation deduction. The judge further pointed out that nothing in the regulation “precludes the recipient corporation from continuing the transferor’s higher depreciable basis.” Id. at 273.
Judge Bianco also found as persuasive Taxpayer’s argument that
it “followed [the] dear directive [of N.J.A.C. 18:7-5.4(a)(l) ] in talcing- the same basis in the assets as the [Parent Corporation’s] basis, as provided in I.E.C. *229 8 362(a) .. and using the depreciation method and period of the [Parent Corporation] in depreciating the transferred assets, as provided in I.K.C. 8 168(i)(7) .”
[and]
"lljhe Director follows Section 351, yet ... ignores the express cross reference in I.R.C. Section 351(h)(2) which provides: ‘For the basis of stock or property received in an exchange to which this section applies, see sections 358 and 362.’ The Director may not ignore any express reference such as this. See, e.g.[,] Adler v. Director, Div. of Taxation, 20 N.J.Tax 537, 543 [ (Tax 2003) ].”
[Id. at 274 (sixth, seventh, ninth, and tenth alterations added).]
Keying on the words “there shall be allowed as a deduction any excess or there must be restored as an item of income any deficiency of depreciation disallowed,” the Division asserts that the regulation allows for just a “single deduction” by “a single taxpayer when disposing of ... property.” It argues, as it did at oral argument before the Tax Court, that because the Parent transfer- or and Taxpayer transferee are separate distinct corporations, the Legislature intended to give only the transferor the right to recoup the prior depreciation lost by the uncoupling slow-down, not the transferee.
The Division also argues that the judge incorrectly found the CBT Act did not require Taxpayer to account for the uncoupled assets transferred by Parent at its federal depreciable basis. It maintains in its appellate brief, without referencing the exact language, that the definition of “entire net income,” as found in N.J.S.A. 54:10A-4(k), requires Taxpayer to start depreciation of its newly acquired uncoupled assets from the federal accelerated depreciable basis. It maintains that the Parent made a mistake in not taking the deduction.
We disagree. To be sure, the CBT Act gives the Director the authority to promulgate rules and regulations to carry out the provisions of the CBT Act, including “the manner in which the remaining life of property shall be reported.” N.J.S.A. 54:10A-4(k)(2)(F)(ii). “LA]n administrative interpretation which attempts to add to a statute something which is not there can furnish no sustenance to the enactment.” Fedders Fin. Corp. v. Dir., Div. of Taxation, 96 N.J. 376, 392, 476 A.2d 741 (1984) (quotations omitted). We find nothing in our reading of the CBT Act, including N.J.S.A. 54:10A-4(k), that expresses an intent to *230 preclude a transferee from maintaining the same depreciable basis as the transferor so long as it was permissible prior to re-coupling.
Moreover, we read the provisions of N.J.A.C. 18:7-5.2(a)(2)(v) the same way as did Judge Bianco. The judge’s rationale for reaching his determination based upon the administrative regulation’s reference to the federal statute allowing for transfer of the same basis in § 351 tax-free transactions, appears reasonable and appropriate. Recognizing and giving due regard to the special expertise possessed by judges of the Tax Court, we are in accord with Judge Bianco’s determination. Disabilities Res. Ctr./Atl. & Cape May, Inc. v. City of Somers Point, 371 N.J. Super. 1, 9, 851 A.2d 792 (App.Div.2004). We affirm substantially for the reasons expressed by him in his comprehensive published opinion of November 29, 2006.
Affirmed.

 The excess depreciation deduction equals the difference between the accelerated depreciation allowed on a taxpayer’s Federal Return and the straight-line deduction on its State Return.

 Straight-line depreciation assumes equal amounts of depreciation over an asset’s useful life. Under accelerated depreciation, the asset is depreciated at a greater rate at the beginning of its life and lesser as it ages. Accelerated depreciation is used to lessen net income. Black’s Law Dictionary 473 (8th ed. 2004).

 26 U.S.C.A. § 351 (1990).

 The Division was barred by the statute of limitations from assessing additional CBT for the 1996-1997 tax year.

 The $74,858 was arrived at by disallowing depreciation of $11,470,685 of $21,857,502 claimed for 1998; $13,428,162 of $18,069,907 claimed for 1999; and $8,791,003 of $11,331,471 claimed for 2000. It included interest, late payment penalty, and post-amnesty penalty. NJ.S.A. 54:53-18.

 A Conferee is employed by the Division's Conference and Appeals Branch with job duties that include holding administrative conferences with taxpayers.